UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ILLINOIS NATIONAL INSURANCE COMPANY,

                Plaintiff,                                Case No. 07 CV 8248 (JFK)

      - against -

UNITED STATES FIDELITY AND GUARANTY,

                Defendant.
-----------------------------------------------------------------X

**MEMORANDUM OF LAW OF DEFENDANT
IN OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT AND IN
<u>SUPPORT OF CROSS-MOTION FOR A STAY</u>**

GOETZ FITZPATRICK, LLP
Attorneys for Defendant
One Penn Plaza, Suite 4401
New York, New York 10119
(212) 695-8100

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ILLINOIS NATIONAL INSURANCE COMPANY,

                Plaintiff,                Case No. 07 CV 8248 (JFK)

      - against -

UNITED STATES FIDELITY AND GUARANTY,

                Defendant.
----------------------------------------------------------------X

**MEMORANDUM OF LAW OF DEFENDANT
IN OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT AND IN
SUPPORT OF CROSS-MOTION FOR A STAY**

**PRELIMINARY STATEMENT**

       Defendant United States Fidelity and Guaranty ("USF&G") opposes the attempt by plaintiff Illinois National Insurance Company ("Illinois National") to obtain summary judgment on an Obligation Bond (the "Bond") where the only alleged outstanding obligation of the principal, Petrocelli Electric Co., Inc. ("Petrocelli"), accrued after USF&G cancelled the Bond.

       Illinois National has created factual issues by first seeking the full penal sum of the Bond from USF&G after Petrocelli allegedly failed to provide replacement security, then abandoning that demand and, instead, attempting to collect the full amount of the Bond for a deductible loss reimbursement for September, 2006, which accrued a full two years after the cancellation of the Bond.

       Specifically, factual issues exist as to: 1) why Illinois National abandoned its demand for the full penal sum of the Bond by not responding to a July 26, 2005 inquiry by USF&G as to

1

whether Petrocelli had provided replacement security; 2) why Illinois National demanded, instead, in a letter dated January 19, 2007, the full amount of the Bond for a deductible loss reimbursement from September, 2006; 3) whether any Bond obligations remain under the insurance agreements in effect prior to the cancellation of the Bond; and 4) whether Illinois National improperly seeks the full amount of the Bond in order to satisfy an obligation of Petrocelli that arose after the cancellation of the Bond.  As result, this Court should deny the motion for summary judgment in its entirety.

USF&G also seeks a stay of this action pending the outcome of an arbitration Illinois National commenced against Petrocelli (the "Arbitration").  In the Arbitration, Illinois National seeks all amounts owed, including security, under insurance agreements with Petrocelli.  Because the claim for security in the Arbitration duplicates the claim Illinois National now makes under the Bond, the Arbitration will resolve the issues in this action.

## FACTS

a.   **The Demands Under the Bond**

On or about November 10, 2000, USF&G, as Surety, issued the Bond in favor of Illinois National, as Obligee.  The Bond guaranteed the obligations of Petrocelli, as Principal, under certain insurance policies Illinois National issued to Petrocelli.

Pursuant to paragraph 5 of the Bond, USF&G provided a 90-day notice dated June 30, 2004, in which USF&G informed Illinois National and Petrocelli of the cancellation of the Bond, effective October 7, 2004.

By letter dated September 23, 2004, Illinois National demanded that USF&G pay $916,958.00, which is the full penal sum of the Bond, because Petrocelli had purportedly failed

to provide successive security to replace the Bond, as paragraph 5 of the Bond requires.

In a letter dated July 2, 2005, Illinois National asked USF&G for proof of payment under the Bond. USF&G responded by letter dated July 26, 2005, which stated that Petrocelli had informed USF&G that the matter had been resolved and that there was a substantial premium refund due Petrocelli.

USF&G never received a response from Illinois National to the July 26, 2005 letter. As a result, USF&G reasonably assumed that all questions pertaining to the demand for successive security to replace the Bond had been resolved.

It was not until the receipt of a letter dated January 19, 2007 – well over two years after the cancellation of the Bond – that Illinois National communicated with USF&G regarding the Bond. In the January 19, 2007 letter, Illinois National demanded payment of the full amount of the Bond, but for a completely different reason than the one set forth in the September 23, 2004 letter.

The January 19, 2007 letter, unlike the September 23, 2004 letter, makes no reference to a demand for successive security for replacement of the Bond. Instead, the January 19, 2007 letter demands payment in the amount of $916,953.00 "to satisfy outstanding bills on a deductible loss reimbursement for September 2006."

USF&G responded to the January 19, 2007 letter in a letter dated January 30, 2007, in which USF&G denied the demand of Illinois National for payment on the ground that USF&G had cancelled the Bond effective October 7, 2004. Illinois National did not respond to the January 30, 2007 letter. It subsequently commenced this lawsuit on September 21, 2007, in which it purportedly seeks the successive security it originally demanded in the September 23,

2004 letter.

b. <u>**The Arbitration**</u>

After the commencement of this action, Illinois National started the Arbitration against Petrocelli. In the Arbitration, Illinois National seeks "all amounts owed for the coverage years 1995 to 2002 as premiums, expenses, fees, reimbursement, damages or security" pursuant to certain Agreements. The amounts Illinois National seeks in the Arbitration are duplicative, in part, of the claim in this action for successive security for replacement of the Bond. Inasmuch as the underlying liability for the alleged successive security attaches to Petrocelli, the Arbitration will resolve the issues Illinois National raises in the case at bar.

<u>**ARGUMENT**</u>

<u>**POINT I**</u>

<u>**USF&G HAS NO OBLIGATION TO PAY
ON A CANCELLED BOND OR TO
PAY MORE THAN THE PENAL SUM**</u>

In this action, Illinois National improperly attempts to obtain payment under the Bond for an obligation that accrued after the cancellation of the Bond. Illinois National abandoned its September 23, 2004 demand for replacement security from USF&G because it never responded to the July 26, 2005 inquiry from USF&G as to whether that issue had been resolved. USF&G heard nothing from Illinois National until its receipt of the January 19, 2007 letter, in which Illinois National demanded payment of the full amount of the Bond for reimbursement of a September 2006 deductible loss.

Recognizing that it could not seek reimbursement for a loss that accrued after the cancellation of the Bond, Illinois National resurrected its demand for replacement security by

instituting this action in September, 2007. Under the guise of seeking replacement security, Illinois National is using this action to obtain payment of the full penal sum of the Bond in order to apply that amount towards a loss that accrued after the effective date of the cancellation.

Notably, Illinois National has presented no evidence that its payment of the September 2006 loss had anything to do with the payment of any Obligations under the Agreements referenced in the Bond. The second WHEREAS clause of the Bond defines "Obligations" as "the sums due or to become due from Principal [Petrocelli] to the Obligee [Illinois National] under the Agreements." The first WHEREAS clause of the Bond defines the "Agreements" collectively as certain insurance policies Illinois National issued on behalf of Petrocelli and certain other agreements between Illinois National and Petrocelli.

Paragraph 2 of the Bond requires Illinois National to return to USF&G all unapplied portions of the Bond Collateral once Illinois National determines that all of the Obligations have been fully and finally paid. The fact that Illinois National abandoned its demand for replacement security suggests that no Obligations remain unpaid for the period when the Bond was in effect. There is no other plausible explanation for why Illinois National did not pursue its September, 2004 demand for the full penal sum and why, instead, it sought reimbursement on a September, 2006 deductible loss.

A surety cannot be liable for claims that accrued after the cancellation date of a bond. In *Hetchkop v. Gundolt Carpet Workroom, Inc.*, 841 F. Supp. 113 (S.D.N.Y. 1994), a surety exercised its right under a bond to "'cancel its liability as to future assessments under th[e] bond at any time by written notice . . . at least 30 days in advance of the cancellation.'" By letter dated October 8, 1991, the surety requested that it be released from all liability under the bond.

Although this Court rejected the argument of the surety that the October 8, 1991 letter released it from all liability, the Court held that "the only reasonable reading of the Bond's language is that during the term of the Bond, [the surety] could elect to terminate its liability only as to claims accruing after the cancellation date." *Id.* at 117.

A surety cannot hold bond collateral if it has no obligations for the period prior to the cancellation of the bond. *See In re Bradlees Stores, Inc. v. St. Paul Fire and Marine Insurance Co.*, 291 B.R. 307 (Bkrtcy S.D.N.Y. 2003) (surety could not hold security in excess of its potential liability on claims that accrued prior to the cancellation of a bond); *Pittston Warehouse Corporation v. American Motorists Insurance Co.*, 715 F. Supp. 1221 (S.D.N.Y. 1989) (where a surety was released from liability after the cancellation of a bond, and the surety had no potential liability on claims prior to the effective date of the cancellation, the surety could not retain the bond collateral).

In the case at bar, the abandonment by Illinois National of its demand for the Bond Collateral constituted an implicit acknowledgment that no Obligations remain outstanding under the Agreements. Although Illinois National intentionally omitted any mention of the January 19, 2007 letter, Illinois National seeks the Bond Collateral to pay for a reimbursement on a deductible loss that accrued in September 2006 – almost two years after the effective date of the cancellation of the Bond. Having cancelled the Bond effective October 7, 2004, USF&G cannot be liable for a deductible loss Illinois National paid in September 2006, even if the Principal remains liable for that loss.

Illinois National refers to paragraph 2 of the Bond, which states that the Surety waives "each and every right which it may have to contest Obligee's computation of the Obligations or

the application of the Bond Collateral by the Obligee to the Obligations." In the instant case, however, USF&G cancelled the Bond effective October 7, 2004. The liability of USF&G under the Bond ended on that date.

Paragraph 2 does not insulate Illinois National from any obligation to disclose its use of the Bond Collateral. Although Illinois National can never demand more than the full penal sum of the Bond, it has done just that in its September 23, 2004 and January 19, 2007 letters.

In making two competing demands for the full amount of the Bond, Illinois National has run afoul of paragraph 1 of the Bond. Paragraph 1 of the Bond provides, "The Obligee may present one or more Demands at any time in its sole discretion, <u>provided however, Surety shall not be obligated to pay an aggregate amount in excess of the penal sum of the bond</u>." [Emphasis added] Illinois National cannot demand both the full penal sum, as it did in its September 23, 2004 letter (and as it does in this action), and the full amount of the Bond to satisfy outstanding bills on a deductible loss reimbursement, as it did in its January 19, 2007 letter.

Illinois National is not entitled to the payment of the full penal sum of the Bond. At the very least, factual issues exist as to: 1) why Illinois National abandoned its demand for replacement security by not responding to the July 26, 2005 letter; 2) why Illinois National demanded, instead, a loss reimbursement in the January 19, 2007 letter; 3) whether any Obligations under the Agreements remain outstanding; and 4) whether the amount Illinois National demanded in the January 19, 2007 letter remains a liability under the cancelled Bond.

In addition, Illinois National is not entitled to interest for the period October 1, 2004 to April 7, 2008 under paragraph 3 of the Bond. Illinois National has not shown how it incurred interest in enforcing the Bond as early as October 1, 2004, where it did not pursue the Bond

Collateral and, instead, sought the full amount of the Bond to cover a deductible loss that accrued after the cancellation date of the Bond. In order to justify its claim for interest on the full penal sum from October 1, 2004 to April 7, 2008, Illinois National should at least demonstrate that during that period, Obligations existed to which the Bond Collateral applied.

**POINT II**

**THIS COURT SHOULD STAY THIS ACTION
PENDING THE OUTCOME OF AN ARBITRATION
WHICH WILL RESOLVE THE ISSUES IN THIS CASE**

Under principles of comity, a court may stay an action even against those parties not directly subject to arbitration in order to promote the efficient use of judicial resources and pursuant to the court's inherent authority to effectively manage its docket. *Vertucci v. Orvis*, 2006 WL 1688078 (2d Cir. 2006). Section 3 of the Federal Arbitration Act, which permits a court to stay an action where an issue is referable to arbitration under an agreement, could encompass nonparties to the agreement who have relationships or interests in the arbitrable dispute, as the district court has the general power to issue a stay. *Id.*

The Second Circuit has held that despite the inapplicability of the Federal Arbitration Act, district courts "may stay a case pursuant to 'the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants.'" *Worldcrisa Corporation v. Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997).

It is appropriate to grant a stay where a pending arbitration may determine the issues involved in the case. The issuance of such a stay is entirely within the discretion of the court. *Orange Chicken LLC v. Nambe Mills, Inc.*, 2000 WL 1858556 (S.D.N.Y. 2000).

The movant must first establish that there are issues common to the arbitration and the

court and that those issues will finally be determined by the arbitration. If that test is met, the movant has the burden of showing that a stay will not hinder the arbitration, that the arbitration will be resolved within a reasonable time and that any delay that may occur will not cause undue hardship to the nonmoving party. Stays are also particularly appropriate where they promote judicial economy and avoidance of confusion and possible inconsistent results. *Orange Chicken, LLC, supra; American Shipping Line, Inc. v. Massan Shipping Industries*, 885 F. Supp. 499 (S.D.N.Y. 1995).

Illinois National chose the arbitration forum. In that proceeding, Illinois National seeks relief that duplicates the relief it seeks in this action. Specifically, in the Arbitration, Illinois National seeks all amounts Petrocelli owes, including security, under certain Agreements that were in effect from 1995 to 2002, prior to the cancellation of the Bond. In the case at bar, Illinois National seeks the full penal sum of the Bond because of the alleged failure of Petrocelli to provide security.

Petrocelli and USF&G entered into an Indemnity Agreement whereby Petrocelli agreed to indemnify USF&G and hold it harmless from all claims, damages, expenses, losses and costs which USF&G may sustain, incur or become liable for as a result of executing the Bond, including the defense of any action under the Bond.

If any liability attaches under the Bond, Petrocelli bears the ultimate burden of that liability, whether the liability is imposed in the Arbitration or in Court. It would be highly prejudicial to USF&G to have to defend this action, only to have to turn around and seek indemnification from Petrocelli in the event Illinois National prevails.

USF&G has met the burden for obtaining a stay, despite the fact that it is not subject to

9

the Arbitration. First, USF&G has shown that there are issues common to the Arbitration and to this Court and that the Arbitration will determine those issues. Second, a stay will not hinder the Arbitration or prejudice Illinois National, as Illinois National chose that forum. Petrocelli has already chosen its Arbitrator and the Arbitration can proceed as quickly as Illinois National would like to proceed. As a result, this Court should stay the instant action pending the resolution of the Arbitration.

## CONCLUSION

Based on the foregoing, this Court should deny the summary judgment motion of Illinois National all respects. In addition, this Court should stay the instant action pending the outcome of the Arbitration Illinois National commenced, which will resolve the underlying issues in this case.

Dated: New York, New York
       June 16, 2008

                                      GOETZ FITZPATRICK, LLP
                                      Attorneys for Defendant

                                      By: _____
                                             Ellen August
                                      One Penn Plaza, Suite 4401
                                      New York, New York 10119
                                      (212) 695-8100

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )

I, JOY SPEIGHTS, being duly sworn, say: I am not a party to the action, am over 18 years of age and reside at Staten Island, New York.  On June 16, 2008, I served the within MEMORANDUM OF LAW OF DEFENDANT IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF CROSS-MOTION FOR STAY  by HAND DELIVERY to:

    Zeichner Ellman & Krause LLP
    Yoav M. Griver, Esq.
    575 Lexington Avenue
    New York, NY 10022
    Attorneys for Plaintiff

_____
JOY SPEIGHTS

Sworn to before me this
30th day of June, 2008

_____
Notary Public

ALTHEA M DORSETT
NOTARY PUBLIC-STATE OF NEW YORK
NO. 01DO5057445
QUALIFIED IN BRONX COUNTY
MY COMMISSION EXPIRES APRIL 16, 2011