UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ILLINOIS NATIONAL INSURANCE COMPANY,

                        Plaintiff,                                 Case No. 07 CV 8248 (JFK)

     - against -

                                                           **STATEMENT OF**
UNITED STATES FIDELITY AND GUARANTY,      **MATERIAL FACTS**
                                                           **AS TO WHICH**
                      Defendant.                                **THERE EXIST**
-----------------------------------------------------------------X  **<u>GENUINE ISSUES</u>**

        Defendant United States Fidelity and Guaranty ("USF&G"), by its attorneys Goetz Fitzpatrick LLP, submits this Statement of Material Facts As To Which There Exist Genuine Issues:

        1.    On or about November 10, 2000, USF&G, as Surety, issued an Obligation Bond under Bond Number KF 5673 (the "Bond") in favor of Illinois National, as Obligee. The Bond guaranteed the obligations of Petrocelli Electric Co., Inc. ("Petrocelli"), as Principal, under certain insurance policies Illinois National issued to Petrocelli. (Affidavit of Kimberly Zanotta ["Zanotta Affidavit"], Exhibit A)

        2.    Pursuant to paragraph 5 of the Bond, USF&G provided a 90-day notice dated June 30, 2004, in which USF&G informed Illinois National and Petrocelli of the cancellation of the Bond, effective October 7, 2004. (Zanotta Affidavit, Exhibit B)

        3.    By letter dated September 23, 2004, Illinois National demanded that USF&G pay $916,958.00, which is the full penal sum of the Bond, on the ground that Petrocelli had failed to provide successive security to replace the Bond, as paragraph 5 of the Bond requires. (Zanotta Affidavit, Exhibit C.)

4. In a letter dated July 2, 2005, Illinois National asked USF&G for proof of payment under the Bond. (Zanotta Affidavit, Exhibit D)

5. USF&G responded by letter dated July 26, 2005, which stated that Petrocelli had informed USF&G that the matter had been resolved and that there was a substantial premium refund due Petrocelli. (Zanotta Affidavit, Exhibit E)

6. USF&G never received a response from Illinois National to the July 26, 2005 letter. As a result, USF&G assumed that all questions pertaining to the demand for successive security to replace the Bond had been resolved. (Zanotta Affidavit)

7. It was not until the receipt of a letter dated January 19, 2007 – well over two years after the cancellation of the Bond – that Illinois National communicated with USF&G regarding the Bond. (Zanotta Affidavit, Exhibit F)

8. In the January 19, 2007 letter, Illinois National demanded payment of the full amount of the Bond, but for a completely different reason than the one set forth in the September 23, 2004 letter. (Zanotta Affidavit, Exhibit F)

9. The January 19, 2007 letter, unlike the September 23, 2004 letter, made no reference to a demand for successive security for replacement of the Bond. Instead, the January 19, 2007 letter demanded payment in the amount of $916,953.00 "to satisfy outstanding bills on a deductible loss reimbursement for September 2006." (Zanotta Affidavit, Exhibit F)

10. USF&G responded to the January 19, 2007 letter in a letter dated January 30, 2007, in which USF&G denied the demand of Illinois National for payment on the ground that USF&G had cancelled the Bond effective October 7, 2004. (Zanotta Affidavit, Exhibit G)

11. Illinois National did not respond to the January 30, 2007 letter. It

subsequently commenced this lawsuit on September 21, 2007. (Zanotta Affidavit; Complaint)

12. Paragraph 2 of the Bond provides, in pertinent part, as follows:

> In the event that Obligee shall demand the entire penal sum of the Bond under a Demand (less any previous amounts paid to Obligee under the Bond), Obligee shall hold all funds ("Bond Collateral") received as security for the Obligations and shall apply such funds to the Obligations from time to time in its sole discretion. <u>At such time as Obligee determines in its sole discretion that all of the Obligations are fully and finally paid and such payment is not subject to avoidance or turnover, Obligee shall return to the Surety the unapplied portion of the Bond Collateral.</u> [Emphasis added]

(Zanotta Affidavit, Exhibit A, ¶ 2)

13. The second WHEREAS clause of the Bond defines "Obligations" as "the sums due or to become due from Principal [Petrocelli] to the Obligee [Illinois National] under the Agreements." The first WHEREAS clause of the Bond defines the "Agreements" collectively as certain insurance policies Illinois National issued on behalf of Petrocelli and certain other agreements between Illinois National and Petrocelli. (Zanotta Affidavit, Exhibit A)

14. Illinois National abandoned its September 23, 2004 demand for replacement security from USF&G because it never responded to the July 26, 2005 inquiry from USF&G as to whether that issue had been resolved. (Zanotta Affidavit)

15. By relinquishing its claim for the Bond Collateral and subsequently demanding the full amount of the Bond for reimbursement of a September, 2006 deductible loss, Illinois National implicitly acknowledged that no Obligations remain outstanding under the Agreements. (Zanotta Affidavit, Exhibit A, ¶ 2)

16. Illinois National has presented no evidence that its payment of the September 2006 deductible loss had anything to do with the payment of any Obligations under

3

the Agreements referenced in the Bond. (Illinois National Summary Judgment Motion)

17. Having cancelled the Bond effective October 7, 2004, USF&G cannot be liable for a loss that accrued in September 2006, even if the Principal remains liable for that loss. (Zanotta Affidavit, Exhibit A, ¶ 5 and Exhibit B)

18. Based on the fact that Illinois National never responded to the July 26, 2005 letter of USF&G and that the next correspondence dated January 19, 2007 demanded payment on a September 2006 deductible loss reimbursement, the documentation of Illinois National creates a factual issue as to whether the requirement for replacement security under the Bond still exists. (Zanotta Affidavit, Exhibits C, D, E and F)

19. Paragraph 1 of the Bond provides, "The Obligee may present one or more Demands at any time in its sole discretion, <u>provided however, Surety shall not be obligated to pay an aggregate amount in excess of the penal sum of the bond</u>." [Emphasis added] (Zanotta Affidavit, Exhibit A, ¶ 1)

20. Pursuant to paragraph 1, Illinois National cannot demand both the full penal sum, as it did in its September 23, 2004 letter, and the full amount of the Bond to satisfy outstanding bills on a deductible loss reimbursement, as it did in its January 19, 2007 letter. (Zanotta Affidavit, Exhibit A, ¶ 1)

21. Paragraph 2 of the Bond, which states that the Surety waives "each and every right which it may have to contest Obligee's computation of the Obligations or the application of the Bond Collateral by the Obligee to the Obligations" does not permit Illinois National to seek payment on claims that accrued after the cancellation date of the Bond or to demand more than the full penal sum of the Bond, which Illinois National has done in its

September 23, 2004 and January 19, 2007 letters. (Zanotta Affidavit, Exhibits A, C and F)

      22. Illinois National is not entitled to interest for the period October 1, 2004 to April 7, 2008 under paragraph 3 of the Bond. Illinois National has not shown how it incurred interest in enforcing the Bond as early as October 1, 2004, where Illinois National did not pursue the Bond Collateral and, instead, sought the full amount of the Bond to cover a deductible loss that accrued after the cancellation date of the Bond. (Zanotta Affidavit, Exhibit A)

      23. In order to justify its claim for interest on the full penal sum from October 1, 2004 to April 7, 2008, Illinois National should at least demonstrate that during that period, Obligations existed to which the Bond Collateral applied. (Zanotta Affidavit, Exhibit A)

      24. Factual issues exist as to: 1) why Illinois National abandoned its demand for the full penal sum by not responding to the July 26, 2005 letter; 2) why Illinois National instead demanded reimbursement for a September, 2006 deductible loss in the January 19, 2007 letter; 3) whether any Obligations under the Agreements remain outstanding; and 4) whether the amount Illinois National demanded in the January 19, 2007 letter remains a liability under the cancelled Bond.

Dated: New York, New York
      June 16, 2008

                              GOETZ FITZPATRICK, LLP
                              Attorneys for Defendant

                              By: _____
                                  Ellen August
                              One Penn Plaza, Suite 4401
                              New York, New York 10119
                              (212) 695-8100