UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ILLINOIS NATIONAL INSURANCE COMPANY,

                Plaintiff,                       Case No. 07 CV 8248 (JFK)

      - against -

UNITED STATES FIDELITY AND GUARANTY,         **AFFIDAVIT IN OPPOSITION TO MOTION FOR <u>SUMMARY JUDGMENT</u>**

                Defendant.
-----------------------------------------------------------------X

STATE OF MARYLAND    )
                    ) ss.:
COUNTY OF BALTIMORE )

      KIMBERLY ZANOTTA, being duly sworn, deposes and says:

      1.   I am Senior Claim Counsel to Travelers, Bond and Financial Products ("Travelers"). Defendant United States Fidelity and Guaranty ("USF&G") is a subsidiary of Travelers. As Senior Claim Counsel, I am responsible for handling the investigation of claims received against bonds written on behalf of Petrocelli Electric Co., Inc. ("Petrocelli").

      2.   I am fully familiar with the facts and circumstances of this case. I submit this affidavit in opposition to the motion for summary judgment of plaintiff Illinois National Insurance Company ("Illinois National") and in support of the application of USF&G for a stay of this action pending the resolution of an arbitration Illinois National commenced against Petrocelli (the "Arbitration").

<u>**Factual Background**</u>

      3.   On or about November 10, 2000, USF&G, as Surety, issued an Obligation Bond under Bond Number KF 5673 (the "Bond") in favor of Illinois National, as Obligee. The

Bond guaranteed the obligations of Petrocelli, as Principal, under certain insurance policies

Illinois National issued to Petrocelli.  (A copy of the Bond is annexed hereto as Exhibit A.)

    4.   Paragraph 5 of the Bond provides as follows:

> This Bond shall become effective 6/1/00 and shall remain in full
> force and effect thereafter for a period of one year and will
> automatically extend for additional one year periods from the
> expiry date thereof, or any future expiration date, unless the Surety
> provides to the Obligee not less than ninety (90) days advance
> written notice of its intent not to renew this Bond . . . .

    5.   By notice dated June 30, 2004, USF&G informed Illinois National and

Petrocelli of the cancellation of the Bond, effective October 7, 2004.  (A copy of the June 30,

2004 Notice is annexed hereto as Exhibit B.)

    6.   By letter dated September 23, 2004, Illinois National demanded that USF&G

pay $916,958.00, the full penal sum of the Bond, because Petrocelli had purportedly failed to

provide successive security to replace the Bond, as paragraph 5 of the Bond requires.  (A copy of

the September 23, 2004 letter is annexed hereto as Exhibit C.)

    7.   By letter dated July 2, 2005, Illinois National asked USF&G for proof of

payment under the Bond.  (A copy of the July 2, 2005 letter is annexed hereto as Exhibit D.)

    8.   USF&G responded by letter dated July 26, 2005.  The July 26, 2005 letter

stated that Petrocelli had informed USF&G that the matter had been resolved.  Petrocelli had also

informed USF&G that there was a substantial premium refund due Petrocelli.  (A copy of the

July 26, 2005 letter is annexed hereto as Exhibit E.)

    9.   USF&G never received a response from Illinois National to the July 26, 2005

letter.  As a result, USF&G reasonably assumed that all questions pertaining to the demand for

successive security to replace the Bond had been resolved.

      10.   It was not until the receipt of a letter dated January 19, 2007 – well over two years after the cancellation of the Bond – that Illinois National communicated with USF&G regarding the Bond. (A copy of the January 19, 2007 letter is annexed hereto as Exhibit F.)

      11.   In the January 19, 2007 letter, Illinois National demanded payment of the full amount of the Bond, but for a completely different reason than the one set forth in the September 23, 2004 letter.

      12.   The January 19, 2007 letter, unlike the September 23, 2004 letter, makes no reference to a demand for successive security for replacement of the Bond. Instead, the January 19, 2007 letter demands payment in the amount of $916,953.00 "to satisfy outstanding bills on a deductible loss reimbursement for September 2006."

      13.   USF&G responded to the January 19, 2007 letter in a letter dated January 30, 2007, in which USF&G denied the demand of Illinois National for payment on the ground that USF&G had cancelled the Bond effective October 7, 2004. (A copy of the January 30, 2007 letter is annexed hereto as Exhibit G.) Illinois National did not respond to the January 30, 2007 letter. It subsequently commenced this lawsuit on September 21, 2007.

### USF&G Has No Obligation To Pay On A Cancelled Bond

      14.   Illinois National is not entitled to summary judgment. Illinois National relinquished its September 23, 2004 demand for replacement security by its failure to respond to the July 26, 2005 inquiry by USF&G as to the status of that demand.

      15.   Instead, Illinois National demanded payment on a September 2006 deductible loss reimbursement, which falls outside the cancellation period of the Bond. By its

own actions, Illinois National implicitly acknowledged that the requirement for replacement security under the Bond no longer exists.

16.    Paragraph 2 of the Bond requires Illinois National to return to USF&G all unapplied portions of the Bond Collateral once Illinois National determines that all of the Obligations have been fully and finally paid.

17.    In that regard, paragraph 2 provides, in pertinent part, as follows:

> In the event that Obligee shall demand the entire penal sum of the Bond under a Demand (less any previous amounts paid to Obligee under the Bond), Obligee shall hold all funds ("Bond Collateral") received as security for the Obligations and shall apply such funds to the Obligations from time to time in its sole discretion. At such time as Obligee determines in its sole discretion that all of the Obligations are fully and finally paid and such payment is not subject to avoidance or turnover, Obligee shall return to the Surety the unapplied portion of the Bond Collateral. [Emphasis added]

18.    The second WHEREAS clause of the Bond defines "Obligations" as "the sums due or to become due from Principal [Petrocelli] to the Obligee [Illinois National] under the Agreements." The first WHEREAS clause of the Bond defines the "Agreements" collectively as certain insurance policies Illinois National issued on behalf of Petrocelli and certain other agreements between Illinois National and Petrocelli.

19.    The fact that Illinois National abandoned its demand for replacement security suggests that no Obligations remain unpaid for the period when the Bond was in effect. There is no other plausible explanation for why Illinois National did not pursue its September, 2004 demand for the full penal sum.

20.    Notably, Illinois National has presented no evidence that its payment of the September 2006 loss had anything to do with the payment of any Obligations under the

Agreements referenced in the Bond.

21.     Indeed, the omission of any mention of the January 19, 2007 letter in the Complaint or on this motion corroborates the conclusion that the payment on the September 2006 deductible loss falls outside the cancellation date of the Bond and raises the question of whether the payment on that loss was even related to the Agreements .

22.     As stated above, paragraph 2 of the Bond requires Illinois National to return to the Surety the unapplied portion of the Bond Collateral.  Because Illinois National did not pursue the Bond Collateral, it has implicitly acknowledged that no Obligations remain outstanding under the Agreements.

23.     Instead, by its January 19, 2007 letter, Illinois National attempts to collect under the Bond for reimbursement on a deductible loss that occurred in September 2006 – almost two years after the effective date of the cancellation of the Bond.  Having cancelled the Bond effective October 7, 2004, USF&G cannot be liable for a loss Illinois National paid in September 2006, even if the Principal remains liable for that loss.

24.     Paragraph 1 of the Bond provides another reason for the denial of summary judgment.  Paragraph 1 states, "The Obligee may present one or more Demands at any time in its sole discretion, provided however, Surety shall not be obligated to pay an aggregate amount in excess of the penal sum of the bond."  [Emphasis added]

25.     As stated above, the January 19, 2007 letter did not demand payment of the full penal sum of the Bond due to the alleged failure of Petrocelli to provide security to replace the Bond.  Instead, that letter demanded payment of the full amount of the Bond to satisfy outstanding bills on a deductible loss reimbursement for September 2006.

26.    Pursuant to paragraph 1, Illinois National cannot demand both the full penal sum, as it did in its September 23, 2004 letter, and the full amount of the Bond to satisfy outstanding bills on a deductible loss reimbursement, as it did in its January 19, 2007 letter.

27.    Illinois National refers to paragraph 2 of the Bond, which states that the Surety waives "each and every right which it may have to contest Obligee's computation of the Obligations or the application of the Bond Collateral by the Obligee to the Obligations." In the instant case, however, USF&G cancelled the Bond effective October 7, 2004. The liability of USF&G under the Bond ended on that date.

28.    Paragraph 2 does not permit Illinois National to operate under a shroud of secrecy. Although Illinois National can never demand more than the full penal sum of the Bond, it has done just that in its September 23, 2004 and January 19, 2007 letters.

29.    As a result, Illinois National is not entitled to the payment of the full penal sum of the Bond. At the very least, factual issues exist as to: 1) why Illinois National abandoned its demand for the full penal sum by not responding to the July 26, 2005 letter; 2) why Illinois National instead demanded a deductible loss reimbursement for September, 2006 in the January 19, 2007 letter; 3) whether any Obligations under the Agreements remain outstanding; and 4) whether the amount Illinois National demanded in the January 19, 2007 letter remains a liability under the cancelled Bond.

**Illinois National Is Not Entitled To Interest From September 23, 2004**

30.    Illinois National seeks interest on the penal sum of the Bond from October 1, 2004 to April 7, 2008. Illinois National is not entitled to that interest.

31.    Illinois National relies on paragraph 3 of the Bond in support of its claim for

interest. Paragraph 3 provides for the payment of costs and expenses, including interest, incurred in enforcing the Bond. Illinois National has not shown how it incurred interest in enforcing the Bond as early as October 1, 2004, where Illinois National did not pursue the Bond Collateral and, instead, sought the full amount of the Bond to cover a deductible loss that accrued after the cancellation date of the Bond.

32.     Even if USF&G had paid Illinois National the full penal sum, the purpose of that security was to enable Illinois National to pay Obligations under the Agreements, not to give Illinois National a fund from which to collect interest indefinitely. In order to justify its claim for interest on the full penal sum from October 1, 2004 to April 7, 2008, Illinois National should at least demonstrate that during that period, Obligations existed to which the Bond Collateral applied.

### This Court Should Stay This Action Pending The Outcome Of The Arbitration

33.     Upon information and belief, Illinois National commenced an arbitration against Petrocelli (the "Arbitration") in which Illinois National demands all amounts Petrocelli owes "as premiums, expenses, fees, reimbursement, damages or as security" under certain agreements that were in effect prior to the cancellation of the Bond. [Emphasis added]

34.     Counsel has provided me with a copy of the Demand For Arbitration dated February 19, 2008 (the "Demand"), which I have reviewed. (A copy of the February 19, 2008 Demand For Arbitration is annexed hereto as Exhibit H.)

35.     The Demand duplicates the demand in the case at bar, in which Illinois National seeks from USF&G the full penal sum of the Bond because of the failure of Petrocelli to provide successive security.

7

36.    Petrocelli and USF&G entered into an Indemnity Agreement, dated December 12, 2003, whereby Petrocelli agreed to indemnify USF&G and hold it harmless from all claims, damages, expenses losses and costs which USF&G may sustain, incur or become liable for as a result of executing the Bond, including defending any action under the Bond.  (A copy of the December 12, 2003 Indemnity Agreement is annexed hereto as Exhibit I.)

37.    If any liability attaches under the Bond, Petrocelli bears the ultimate burden of that liability.  It would be highly prejudicial to USF&G to have to turn araound and seek indemnification from Petrocelli in the event Illinois National prevails here, when Illinois National commenced the Arbitration directly against Petrocelli for the same liability Illinois National seeks to impose on USF&G.

38.    Based on the foregoing, this Court should deny the summary judgment motion of Illinois National all respects.  In addition, this Court should stay this action pending the outcome of the Arbitration between Illinois National and Petrocelli, as the Arbitration will resolve the issues in this case.

Kimberly Zanotta

Sworn to before me this
13th day of June, 2008.

Notary Public    My Commission Expires
January 1, 2011

8

# EXHIBIT A

## OBLIGATION BOND

Bond Number:    KF 5673

**KNOW ALL MEN BY THESE PRESENTS:**

That  Petrocelli Electric Co., Inc.    , as principal ("Principal") and  United States Fidelity and Guaranty  as surety ("Surety"), are held and firmly bound unto Illinois National Insurance Company and each of its affiliates and subsidiaries, as obligee (herein collectively and individually referred to as "Obligee") for the payment of the Obligations (hereafter defined), up to the maximum penal sum of Nine Hundred Sixteen Thousand Nine Hundred Fifty-Eight and 00/100 Dollars ($ 916,958.00 ) lawful money of the United States to payment of which sum, Principal and Surety hereby bind themselves, their successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, Obligee has issued certain insurance policies on behalf of the Principal and has entered into certain other agreements with the Principal as may be amended and/or renewed from time to time (herein collectively referred to as the "Agreement(s)"), and:

WHEREAS, the Obligee requires security for all of the Principal's Obligations to Obligee under each of the Agreements.  For purposes of this Bond, "Obligation(s)" is understood to mean the sums due or to become due from Principal to Obligee under the Agreements.

NOW, THEREFORE, if and when the Obligations shall be fully and finally paid and satisfied this Bond shall be null and void; otherwise this Bond shall remain in full force and effect and Principal and Surety in any event agree as follows:

1) Within ten (10) business days of Surety's receipt of a demand for payment under this Bond ("Demand"), Surety shall pay to the Obligee the amount of such Demand.  The Obligee's Demand to the Surety of the amount due, either as security or for payment or for reimbursement pursuant to the Agreement(s), shall be absolute proof of the existence and extent of the liability of the Principal and the Surety to the Obligee hereunder.  The Obligee may present one or more Demands at any time in its sole discretion, provided however, Surety shall not be obligated to pay an aggregate amount in excess of the penal sum of the bond.

2) In the event that Obligee shall demand the entire penal sum of the Bond under a Demand (less any previous amounts paid to Obligee under the Bond), Obligee shall hold all funds ("Bond Collateral") received as security for the Obligations and shall apply such funds to the Obligations from time to time in its sole discretion.  At such time as Obligee determines in its sole discretion that all of the Obligations are fully and finally paid and such payment is not subject to avoidance or other turnover, Obligee shall return to the Surety the unapplied portion of the Bond Collateral.  The Surety, whether in its capacity as surety or subrogee of the Principal, waives, to the fullest extent permitted by applicable law each and every right which it may have to contest Obligee's computation of the Obligations or the application of the Bond Collateral by the Obligee to the Obligations, and waives, to the fullest extent permitted by applicable law, each and every right which it may have to seek reimbursement, restitution or recovery of any Bond Collateral. Obligee shall not be required to (i) segregate Bond Collateral from its general funds, (ii) hold or invest Bond Collateral in an interest-bearing or income-producing investment or (iii) account to Surety for interest or income in the event the same would be otherwise attributable to Bond Collateral.  The Principal shall not at any time have any rights or property interests in this Bond, the Bond Collateral or other proceeds of this Bond.

3) Failure to pay or reimburse the Obligee as herein provided shall cause the Surety to be additionally liable for any and all reasonable costs and expenses, including attorney's fees and

interest, incurred by the Obligee in enforcing this bond, such liability to be in addition to the bond penalty.

4) Surety's obligations hereunder shall not be affected by (i) any failure by Obligee to assert any claim or demand or to enforce any right or remedy against Principal or its property, or any other party liable with respect to the Obligations, (ii) any failure to perfect an interest in, or any release, impairment or other diminution of, any collateral (including, but not limited to, rights of recoupment or setoff) held by Obligee which secures any of the Obligations, (iii) any matter or proceeding arising in connection with any modification, limitation, discharge, assumption, or reinstatement with respect to any Agreements or Obligations, (iv) any modification of or amendment to any Agreements or Obligations without Surety's consent or prior notification provided that, the penal sum of the Bond may not be increased without the consent of Surety; however, failure to give such consent will not prevent Obligee from drawing up to the full amount of the Bond (less any previous amounts paid to Obligee under the Bond) either as security or for payment or for reimbursement under the Agreements, or (v) any other circumstances which might otherwise constitute a legal or equitable discharge or defense for Surety.

5) This Bond shall become effective 6/1/00 and shall remain in full force and effect thereafter for a period of one year and will automatically extend for additional one year periods from the expiry date hereof, or any future expiration date, unless the Surety provides to the Obligee not less than ninety (90) days advance written notice of its intent not to renew this Bond or unless this Bond is earlier canceled pursuant to the following. This Bond may be canceled at any time upon ninety (90) days advance written notice from Surety to Obligee. It is understood and agreed that the Obligee may recover the full amount of the Bond (less any previous amounts paid to Obligee under the Bond) If the Surety cancels or nonrenews the Bond and, within thirty (30) days prior to the effective date of cancellation or nonrenewal, the Obligee has not received collateral from Principal acceptable to Obligee (in its sole discretion) to replace the Bond.

6) Any notice, Demand, certification or request for payment, given or made under this Bond shall be made in writing and shall be given by a personal delivery or expedited delivery service, postage pre-paid, addressed to the parties at the addresses specified below or to such other address as shall have been specified by such parties to each of the parties to the transactions contemplated hereby.

If to the Surety:

St Paul Surety
P.O. Box 1138
Baltimore, MD 21203-1138
Attention: Bond Claim

If to Obligee:

AIG
P.O. Box 923
Wall Street Station
New York, NY 10268
Attention: D.B.G. Comptrollers

If to the Principal:

Petrocelli Electric Co., Inc.
22-09 Queens Plaza North
Long Island City, NY 11101
Attention: Santo Petrocelli, Jr., President

Notice given under this Bond shall be effective only when received.

7) The laws of the State of New York shall be applicable in determining the rights and obligations
of the parties
hereto, and the courts of the State of New York, including the United States District Court for the
Southern District of
New York shall have the sole jurisdiction over any dispute arising out of enforcement of this Bond
by the Obligee.

In WITNESS THEREOF, the said Principal and Surety have signed and sealed this instrument
on this ___10TH___ day of November, 2000.

Petrocelli Electric Co., Inc.

By _____
    Santo Petrocelli, Jr.                              President


United States Fidelity and Guaranty Company

By _____
    John B. O'Keefe                              Attorney-in-fact

RIDER

To be attached to and form part of Bond No.  KF 5673

In favor of ILLINOIS NATIONAL INSURANCE COMPANY

It is agreed that:

1.  The Underwriter gives its consent to the change of:

    In subparagraph 1), 10 business days is hereby changed to 5 business days.

2.  The Underwriter gives its consent to the change of:

    If to Obligee:  is hereby changed from AIG to Illinois National Insurance Company

PROVIDED, however, that the liability of the Underwriter under the attached bond and
under the attached bond as changed by this Rider shall not be cumulative.

This Rider is effective as November 10, 2000.

Petrocelli Electric Co., Inc.

Accepted: _____

Principal named in bond

By _____

Santo Petrocelli, Jr., President

United States Fidelity and Guaranty

By _____

John O'Keefe, Attorney-in-Fact

*We sent
letter in
July 05
issue
resolved
re collateral
sec —*

*P. didn't
pay
artts
until —*

# EXHIBIT B

NOV 08 2004 14:17 FR ST PAUL          508 553 0760 TO 914433531135          P.03/06

**StPaul Surety**

St. Paul Companies
Surety
124 Grove Street · Suite 311
Franklin, Massachusetts 02038
www.stpaulsurety.com

June 30, 2004

Certified Mail, Return Receipt Requested

AIG-D.B.G. Comptrollers
P.O. Box 923
Wall Street Station
New York, NY 10268

Re      Petrocelli Electric Co., Inc.
        Bond #KF5673
        Obligation Bond

Dear Sir/Madam:

The United States Fidelity and Guaranty  Company as surety under the captioned bond written for a continuous term, beginning on the  30th  day of November, 2000  hereby notifies you that it desires and does hereby cancel said bond.  Cancellation effective October 7,  2004.

This notice is given to you in accordance with the cancellation provisions contained in the above bond.

United States Fidelity and Guaranty Company

_____

Rose Anne Intravesato
Attorney-in-Fact

Cc    Marsh USA, Inc.
      Petrocelli Electric Co., Inc.

St. Paul Fire and Marine
Insurance Company
United States Fidelity
and Guaranty Company
Seaboard Surety Company
Fidelity and Guaranty
Insurance Company
Fidelity and Guaranty
Insurance Underwriters, Inc.
St. Paul Mercury
Insurance Company
St. Paul Guardian
Insurance Company

**EXHIBIT C**

  American International Group
80 Pine Street
New York, NY 10270
212.770.7000
212.770._____ (Direct Dial)

September 23, 2004

The St. Paul Companies Surety
124 Grove Street –Suite 311
Franklin, Massachusetts 02038
Attn: Bond Department

To Whom It May Concern:

Re: **Payment Demand**
   **Principal: Petrocelli Electric Co., Inc.**
   **Bond No.: KF 5673**
   **Amount: $ 916,958.00**

In accordance with the provisions of the above bond, Petrocelli Electric Co., Inc. (the "Principal") having failed to provide successive security to replace this bond, Illinois National Insurance Company (the "Obligee") demands payment in the amount of Nine Hundred Sixteen Thousand Nine Hundred Fifty Eight Dollars ($ 916,958.00).

The funds should be wired to:

The Chase Manhattan Bank
New York, New York
ABA#: 021000021
For the benefit of: Illinois National Insurance Company
Bank account#: 323-160387
Ref: Petrocelli Electric Co., Inc. – Bond Payment Demand

If you should have any questions, please contact Elaine Kogan at (212) 770-0834.

Sincerely,

Mark Paffmann
Assistant Comptroller
Illinois National Insurance Company

cc:

79787 (10/01)

**EXHIBIT D**



**American International Group**
80 Pine Street
New York, NY 10270
212.770.7000
212.770._____ (Direct Dial)

July 2, 2005

The St. Paul Companies
Surety
300 Crown Colony Drive
Quincy, MA 02169
Attn: Rose Anne Intravesato, Attorney-in-Fact/Chris Ward

To Whom It May Concern:

**Re: Payment Demand**
   **Principal: Petrocelli Electric Co., Inc.**
   **Bond No.: KF5673**
   **Amount: $916,958.00**

On September 24, 2004 the Obligee, Illinois National Insurance Company and each of its affiliates and subsidiaries send a demand for payment on the above mentioned bond. Enclosed please find a copy of the bond along with the demand for payment request.

Our Collection Department has recently informed us that they cannot identify receiving payment on this demand. We would appreciate if you would provide proof of payment on this demand so we can remove this security from our database and close our file. If payment has not been made, please advise on reason why this demand was not fulfilled. Should you wish to speak with me directly, please call (212) 770-0884.

Sincerely,

Donato DiLuzio
American International Group
DBG Comptroller/Security Operations

cc: N. McDermott

79787 (10/01)

**EXHIBIT E**

 **ST PAUL TRAVELERS**    111 Schilling Road D2542
Hunt Valley, MD 21031

Paul A. Seegers
Bond Claim Manager
St. Paul Travelers Bond
Phone: (443) 353-2107
Fax: (443) 353-1136

July 26, 2005

American International Group
80 Pine Street
New York, NY 10270

Attn  Donato DiLuzio
     DBG Comptroller/Security Operations

Re:    Principal:        Petrocelli Electric Co., Inc.
       Obligee:          Illinois National Insurance Company
       Bond No.:         007-S-KF5673
       Claim No.:        111-SC-S0506627-NR

Dear Mr. DiLuzio:

This will acknowledge receipt your July 2, 2005 letter and attachments.  Please understand that this acknowledgment is under a full reservation of our rights as surety, as well as rights and defenses derived from Petrocelli Electric Co., Inc. as principal.

Upon investigating your demand, I found that we did receive Mark Paffmann's letter of September 23, 2004 making initial demand on the bond.  Investigating this issue with Petrocelli, we were informed by Norman Fiddleman that Petrocelli was in the process of obtaining replacement security.  We were also informed by Mr. Fiddleman that there was a substantial premium refund due Petrocelli from AIG.  After communicating with Mr. Fiddleman for many months, I was informed that the matter was resolved.  Petrocelli Electric Co., Inc. is a viable ongoing entity, fully capable of meeting AIG's demand.

By copy of this letter, St. Paul Travelers is demanding that Petrocelli Electric Co., Inc. provide satisfactory documentation that it has met its obligation to AIG on the above-captioned bond.

Please contact me if you have any questions.

Sincerely,

Paul A. Seegers
Bond Claim Manager

cc:   Norman Fiddleman, Petrocelli Electric Co., Inc. (via facsimile: 718/752-2261)
      Craig Parrow  (via facsimile: 560/723-5855)

CS-32

**EXHIBIT F**



**American International Group**
80 Pine Street
New York, NY 10270
212.770.7000
212.770._____ (Direct Dial)

January 19, 2007

St. Paul Travelers
111 Schilling Road D2542
Hunt Valley, MD 21031
Attn: Paul A Seegers – Bond Claim Manager

Dear Mr. Seegers,

**Re: Payment Demand**
**Principal: Petrocelli Electric Co., Inc.**
**Bond No.: 007-S-KF5673**
**Amount: $916,958.00**

In accordance with the provisions of the above bond, Petrocelli Electric Co., Inc. (the
"Principal") has failed to provide payment to satisfy outstanding bills on a deductible loss
reimbursement for September 2006. Therefore, the Illinois National Insurance Company (the
"Obligee") demands payment in the amount of Nine Hundred Sixteen Thousand Nine Hundred
Fifty Eight Dollars ($916,958.00). Should you have any questions, please contact Donato
DiLuzio at (212) 820-2412.

Sincerely,

Mark Paffmann
VP/Assitant Comptroller
Illinois National Insurance Company

RECEIVED

JAN 2 4 2007

HTFD. BOND CLAIM

cc: A. Brakebill

ST PAUL TRAVELERS

JAN 2 2 2007

HUNT VALLEY BOND CLAIM

# EXHIBIT G

 **TRAVELERS**

111 Schilling RD.
Hunt Valley, MD 21031

Paul A. Seegers
Bond Claim Manager
Travelers Bond
Phone: (443) 353-2107
Fax: (800) 357-8516
paseeger@travelers.com

January 30, 2007

Illinois National Insurance Company
C/O AIG
P.O. Box 923
Wall Street Station
New York, NY 10268

ATTN: D.B.G. Comptrollers
        Donato DiLuzio

RE:     Payment Demand
        Principal: Petrocelli Electric Co., Inc.
        Bond No.: 007-S-KF5673

Dear Mr. Donato:

This will acknowledge receipt of your January 19, 2007 demand for payment on the above captioned bond. As evidenced by the attached cancellation letter and return receipt acknowledgment the bond was cancelled effective October 7, 2004. Your demand references an outstanding bill from September 2006 well outside the bond period. For this reason United States Fidelity and Guaranty Company must respectfully deny Illinois National Insurance Company's claim. This denial is under a full reservation of our rights as surety as well as rights and defenses of Petrocelli Electric Co., Inc. as principal. If you have any questions or wish to submit further documentation please call or send the information to the undersigned.

Sincerely,

Paul A. Seegers
Bond Claim Manager
Phone (443) 353-2107

CC: Norman Fiddleman, Petrocelli Electric Co., Inc.