Exhibit A

Structural 10539.014



Michael S. Davis
Yoav M. Griver
ZEICHNER ELLMAN & KRAUSE LLP
575 Lexington Avenue
New York, New York 10022
(212) 223-0400
Attorneys for plaintiff Illinois National
  Insurance Company



'07 CIV 8248

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ILLINOIS NATIONAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>- against -<br><br>UNITED STATES FIDELITY AND GUARANTY,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT**<br><br>SEP 21 2007<br>U.S.D.C. S.D.N.Y.<br>CASHIERS |

Plaintiff Illinois National Insurance Company, by its attorneys Zeichner Ellman & Krause LLP, for its complaint against defendant United States Fidelity and Guaranty avers, upon information and belief, as follows:

**THE PARTIES**

1. Plaintiff Illinois National Insurance Company ("Illinois National") is an insurance corporation incorporated under the laws of the State of Illinois, with its principal place of business at 70 Pine Street, New York, New York.

2. Upon information and belief, defendant United States Fidelity and Guaranty ("USF&G") is an insurance corporation incorporated under the laws of the State of Maryland, with its principal place of business in Baltimore, Maryland.

## JURISDICTION AND VENUE

3. This Court has diversity subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because plaintiff Illinois National and defendant USF&G are citizens of different states, and the matter in controversy exceeds $75,000, exclusive of interest and costs.

4. This Court has personal jurisdiction over the parties because the matter in controversy arose in this jurisdiction and venue. Further, the Bond (defined below) identifies "the Courts of the State of New York, including the United States District Court for the Southern District of New York, as having sole jurisdiction over any dispute arising out of enforcement of the Bond."

5. Venue is proper in this District under 28 U.S.C. § 1391.

## BACKGROUND

6. On or before November 10, 2000, Illinois National and each of its subsidiaries and affiliates issued certain insurance policies on behalf of Petrocelli Electric Co., Inc. ("Petrocelli"), and entered into certain payment agreements with Petrocelli (all referred to collectively as "Agreements").

7. To secure Petrocelli's obligations to Illinois National under the Agreements, on or about November 10, 2000, Petrocelli as Principal, and USF&G as Surety, executed an Obligation Bond, Bond No. KF5673 (the "Bond") for the payment of up to the maximum penal sum of Nine Hundred Sixteen Thousand, Nine Hundred Fifty-Eight Dollars ($916,958.), naming Illinois National and each of its affiliates and subsidiaries as Obligee. A copy of the Bond is attached hereto as Exhibit A.

8. Paragraph 1 of the Bond states:

Within ten (10) business days of Surety's receipt of a demand for payment under this Bond ("Demand"), Surety shall pay to Obligee the amount of such Demand. The Obligee's Demand to the Surety for the amount due, either as security of for payment or for reimbursement pursuant to the Agreement(s) shall be absolute proof of the existence and extent of the liability of the Principal and Surety to the Obligee hereunder.[1]

9. Paragraph 3 of the Bond further states:

Failure to pay or reimburse the Obligee as herein provided shall cause the Surety to be additionally liable for any and all reasonable costs and expenses, including attorney's fees and interest, incurred by the Obligee in enforcing this bond, suich liability to be in addition to the bond penalty.

10. In a letter dated September 23, 2004, in accordance with the provisions of the Bond, Illinois National made a demand for payment in the amount of Nine Hundred Sixteen Thousand, Nine Hundred Fifty-Eight Dollars ($916,958.). A copy of the September 23, 2004 letter is attached hereto as <u>Exhibit B</u>. Despite the Demand, no payment was received from USF&G.

11. Illinois National has complied with all conditions precedent required of it under the Agreements, the Bond, and applicable law.

### FIRST CAUSE OF ACTION
### (Breach of Contract)

12. Illinois National repeats and realleges each and every allegation contained

---

[1] A rider to the Bond changed the 10 business day requirement to 5 business days. <u>See</u> Ex. A.

3

in paragraphs 1 through 11 as though fully set forth herein.

13. USF&G has breached its obligations as Surety under the bond by failing to pay the amount demanded by Illinois National within ten business days of USF&G's receipt of such Demand.

14. By the terms of the Bond, defendant USF&G is liable to Illinois National up to a maximum penal sum of $916,958., plus Illinois National's reasonable costs and expenses, including attorneys fees and interest, incurred in enforcing the Bond, no part of which has been paid, despite Demand.

WHEREFORE, Illinois National prays for judgment against USF&G for the sum of $916,958 and interest, plus Illinois National's reasonable costs and expenses, including attorneys fees and interest, incurred in enforcing the Bond, and for such other and further relief as the Court shall deem just, equitable and proper.

Dated:   New York, New York
         September 21, 2007

                              ZEICHNER ELLMAN & KRAUSE LLP

                              By: _____
                                  Michael S. Davis
                                  Yoav M. Griver
                                  575 Lexington Avenue
                                  New York, New York 10022
                                  (212) 223-0400

                                  Attorneys for plaintiff Illinois National Insurance
                                     Company

510940.01/10539-014/YG

4



Case 1:07-cv-08248-JFK    Document 22-2    Filed 06/30/2008    Page 6 of 12



## OBLIGATION BOND

Bond Number:    KF 5673

**KNOW ALL MEN BY THESE PRESENTS:**

That _Petrocelli Electric Co., Inc._, as principal ("Principal") and _United States Fidelity and Guaranty_ as surety ("Surety"), are held and firmly bound unto Illinois National Insurance Company and each of its affiliates and subsidiaries, as obligee (herein collectively and individually referred to as "Obligee") for the payment of the Obligations (hereafter defined), up to the maximum penal sum of Nine Hundred Sixteen Thousand Nine Hundred Fifty-Eight and 00/100 Dollars ($ _916,958.00_ ) lawful money of the United States to payment of which sum, Principal and Surety hereby bind themselves, their successors and assigns, jointly and severally, firmly by these presents.

**WHEREAS**, Obligee has issued certain insurance policies on behalf of the Principal and has entered into certain other agreements with the Principal as may be amended and/or renewed from time to time (herein collectively referred to as the "Agreement(s)"), and:

**WHEREAS**, the Obligee requires security for all of the Principal's Obligations to Obligee under each of the Agreements. For purposes of this Bond, "Obligation(s)" is understood to mean the sums due or to become due from Principal to Obligee under the Agreements.

**NOW, THEREFORE**, if and when the Obligations shall be fully and finally paid and satisfied this Bond shall be null and void; otherwise this Bond shall remain in full force and effect and Principal and Surety in any event agree as follows:

1) Within ten (10) business days of Surety's receipt of a demand for payment under this Bond ("Demand"), Surety shall pay to the Obligee the amount of such Demand. The Obligee's Demand to the Surety of the amount due, either as security or for payment or for reimbursement pursuant to the Agreement(s), shall be absolute proof of the existence and extent of the liability of the Principal and the Surety to the Obligee hereunder. The Obligee may present one or more Demands at any time in its sole discretion, provided however, Surety shall not be obligated to pay an aggregate amount in excess of the penal sum of the bond.

2) In the event that Obligee shall demand the entire penal sum of the Bond under a Demand (less any previous amounts paid to Obligee under the Bond), Obligee shall hold all funds ("Bond Collateral") received as security for the Obligations and shall apply such funds to the Obligations from time to time in its sole discretion. At such time as Obligee determines in its sole discretion that all of the Obligations are fully and finally paid and such payment is not subject to avoidance or other turnover, Obligee shall return to the Surety the unapplied portion of the Bond Collateral. The Surety, whether in its capacity as surety or subrogee of the Principal, waives, to the fullest extent permitted by applicable law each and every right which it may have to contest Obligee's computation of the Obligations or the application of the Bond Collateral by the Obligee to the Obligations, and waives, to the fullest extent permitted by applicable law, each and every right which it may have to seek reimbursement, restitution or recovery of any Bond Collateral. Obligee shall not be required to (i) segregate Bond Collateral from its general funds, (ii) hold or invest Bond Collateral in an interest-bearing or income-producing investment or (iii) account to Surety for interest or income in the event the same would be otherwise attributable to Bond Collateral. The Principal shall not at any time have any rights or property interests in this Bond, the Bond Collateral or other proceeds of this Bond.

3) Failure to pay or reimburse the Obligee as herein provided shall cause the Surety to be additionally liable for any and all reasonable costs and expenses, including attorney's fees and

interest, incurred by the Obligee in enforcing this bond, such liability to be in addition to the bond penalty.

4) Surety's obligations hereunder shall not be affected by (i) any failure by Obligee to assert any claim or demand or to enforce any right or remedy against Principal or its property, or any other party liable with respect to the Obligations, (ii) any failure to perfect an interest in, or any release, impairment or other diminution of, any collateral (including, but not limited to, rights of recoupment or setoff) held by Obligee which secures any of the Obligations, (iii) any matter or proceeding arising in connection with any modification, limitation, discharge, assumption, or reinstatement with respect to any Agreements or Obligations, (iv) any modification of or amendment to any Agreements or Obligations without Surety's consent or prior notification provided that, the penal sum of the Bond may not be increased without the consent of Surety; however, failure to give such consent will not prevent Obligee from drawing up to the full amount of the Bond (less any previous amounts paid to Obligee under the Bond) either as security or for payment or for reimbursement under the Agreements, or (v) any other circumstances which might otherwise constitute a legal or equitable discharge or defense for Surety.

5) This Bond shall become effective 6/1/00 and shall remain in full force and effect thereafter for a period of one year and will automatically extend for additional one year periods from the expiry date hereof, or any future expiration date, unless the Surety provides to the Obligee not less than ninety (90) days advance written notice of its intent not to renew this Bond or unless this Bond is earlier canceled pursuant to the following. This Bond may be canceled at any time upon ninety (90) days advance written notice from Surety to Obligee. It is understood and agreed that the Obligee may recover the full amount of the Bond (less any previous amounts paid to Obligee under the Bond) if the Surety cancels or nonrenews the Bond and, within thirty (30) days prior to the effective date of cancellation or nonrenewal, the Obligee has not received collateral from Principal acceptable to Obligee (in its sole discretion) to replace the Bond.

6) Any notice, Demand, certification or request for payment, given or made under this Bond shall be made in writing and shall be given by a personal delivery or expedited delivery service, postage pre-paid, addressed to the parties at the addresses specified below or to such other address as shall have been specified by such parties to each of the parties to the transactions contemplated hereby.

If to the Surety:

> St Paul Surety
> P.O. Box 1138
> Baltimore, MD 21203-1138
> Attention: Bond Claim

If to Obligee:

> AIG
> P.O. Box 923
> Wall Street Station
> New York, NY 10268
> Attention: D.B.G. Comptrollers

If to the Principal:

> Petrocelli Electric Co., Inc.
> 22-09 Queens Plaza North
> Long Island City, NY 11101
> Attention: Santo Petrocelli, Jr., President

Notice given under this Bond shall be effective only when received.

7) The laws of the State of New York shall be applicable in determining the rights and obligations of the parties
hereto, and the courts of the State of New York, including the United States District Court for the Southern District of
New York shall have the sole jurisdiction over any dispute arising out of enforcement of this Bond by the Obligee.

In WITNESS THEREOF, the said Principal and Surety have signed and sealed this instrument on this ___10TH___ day of November, 2000.

Petrocelli Electric Co., Inc.

By _____
Santo Petrocelli, Jr.                    President


United States Fideltiy and Guaranty Company

By _____
John B. O'Keefe                    Attorney-in-fact

RIDER

To be attached to and form part of Bond No. **KF 5673**

In favor of **ILLINOIS NATIONAL INSURANCE COMPANY**

It is agreed that:

1. The Underwriter gives its consent to the change of:

    In subparagraph 1), 10 business days is hereby changed to 5 business days.

2. The Underwriter gives its consent to the change of:

    If to Obligee: is hereby changed from AIG to Illinois National Insurance Company

PROVIDED, however, that the liability of the Underwriter under the attached bond and under the attached bond as changed by this Rider shall not be cumulative.

This Rider is effective as November 10, 2000.

Accepted:   Petrocelli Electric Co., Inc.
_____
Principal named in bond

By _____
Santo Petrocelli, Jr., President

United States Fidelity and Guaranty

By _____
John O'Keefe, Attorney-in-Fact





B

 **American International Group**
80 Pine Street
New York, NY 10270
212.770.7000
212.770._____ (Direct Dial)

September 23, 2004

The St. Paul Companies Surety
124 Grove Street – Suite 311
Franklin, Massachusetts 02038
Attn: Bond Department

To Whom It May Concern:

**Re: Payment Demand
Principal: Petrocelli Electric Co., Inc.
Bond No.: KF 5673
Amount: $ 916,958.00**

In accordance with the provisions of the above bond, Petrocelli Electric Co., Inc. (the "Principal) having failed to provide successive security to replace this bond, Illinois National Insurance Company (the "Obligee") demands payment in the amount of Nine Hundred Sixteen Thousand Nine Hundred Fifty Eight Dollars ($ 916,958.00).

The funds should be wired to:

The Chase Manhattan Bank
New York, New York
ABA#: 021000021
For the benefit of: Illinois National Insurance Company
Bank account#: 323-160387
Ref: Petrocelli Electric Co., Inc. – Bond Payment Demand

If you should have any questions, please contact Elaine Kogan at (212) 770-0834.

Sincerely,

Mark Paffmann
Assistant Comptroller
Illinois National Insurance Company

cc: