UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ILLINOIS NATIONAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>- against -<br><br>UNITED STATES FIDELITY AND GUARANTY,<br><br>Defendant. | Case No.:   07 Civ. 8248 (JFK) |

## PLAINTIFF'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Michael S. Davis
Yoav M. Griver
ZEICHNER ELLMAN & KRAUSE LLP
575 Lexington Avenue
New York, New York 10022
(212) 223-0400
Attorneys for plaintiff Illinois National
  Insurance Company

April 7, 2008

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT........................................................................................... 1

STATEMENT OF UNDISPUTED FACTS .......................................................................... 2

    Illinois National's Entitlement To The Maximum Penal Sum Of The Bond ................ 3

    Illinois National's Entitlement To Prejudgment Interest And Its Reasonable
        Fees And Costs In Enforcing The Bond.................................................................. 5

    Other Relevant Provisions Of The Bond ...................................................................... 5

    Relevant Procedural History ......................................................................................... 6

ARGUMENT: SUMMARY JUDGMENT SHOULD BE GRANTED IN ILLINOIS
    NATIONAL'S FAVOR................................................................................................. 7

I.    THE LEGAL STANDARD ON SUMMARY JUDGMENT ..................................... 7

II.   USF&G IS LIABLE BECAUSE THERE HAS BEEN A DEMAND
      MADE UNDER THE BOND .................................................................................... 9

III.  USF&G IS LIABLE FOR THE ATTORNEYS' FEES AND COSTS
      ASSOCIATED WITH ENFORCEMENT OF THE BOND .................................. 11

IV.  PREJUDGMENT INTEREST SHOULD BE AWARDED FROM
      OCTOBER 2004....................................................................................................... 12

V.   USF&G EXPRESSLY AGREED TO WAIVE ALL AFFIRMATIVE
      DEFENSES IN THE BOND; ACCORDINGLY, THE THREE
      PURPORTED AFFIRMATIVE DEFENSES RAISED BY USF&G
      IN ITS ANSWER SHOULD BE STRUCK ............................................................ 13

CONCLUSION .................................................................................................................... 14

# TABLE OF AUTHORITIES

**Federal Cases**

AMEX Assurance Co. v. Carpides,
  179 F. Supp. 2d 309 (S.D.N.Y. 2002) .................................................................. 9, 10, 13

Arcadian Phosphates, Inc. v. Arcadian Corp.,
  884 F.2d 69 (2d Cir. 1989) ................................................................................................ 8

Cavendish Traders, Ltd. v. Nice Skate Shoes, Inc.,
  117 F. Supp. 2d 394 (S.D.N.Y. 2000) ............................................................................... 8

Celotex Corp. v. Catrett,
  477 U.S. 317 (1986) .......................................................................................................... 7

Federal Deposit Ins. Corp. v. LDM Props., Inc.,
  No. CV-94-5778 (CPS), 1996 WL 449346 (E.D.N.Y. July 29, 1996) ............................. 8

Int'l Fidelity Ins. Co. v. County of Rockland,
  98 F. Supp. 2d 400 (S.D.N.Y. 2000) ................................................................................. 9

Julien J. Studley, Inc. v. Gulf Oil Corp.,
  425 F.2d 947 (2d Cir. 1969) ............................................................................................ 12

Marx & Co. v. Diners' Club, Inc.,
  405 F. Supp. 1 (S.D.N.Y. 1975), aff'd in part, rev'd in part on other grounds,
  505 F.2d 505 (2d Cir. 1977) ............................................................................................ 12

Municipal Capital Appreciation Partners I, L.P. v. Page,
  181 F. Supp. 2d 379 (S.D.N.Y. 2002) ............................................................................... 8

Norwest Fin., Inc. v. Fernandez,
  121 F. Supp. 2d 258 (S.D.N.Y. 2000) ............................................................................. 11

Spector v. Mermelstein,
  485 F.2d 474 (2d Cir. 1983) ............................................................................................ 12

Varda Inc. v. Insurance Co. of N. Am.,
  45 F.3d 634 (2d Cir. 1995) .............................................................................................. 12

**State Cases**

City of New York v. Clarose Cinema Corp.,
  256 A.D.2d 69, 681 N.Y.S.2d 251 (1st Dep't 1998) ......................................................... 8

Continental Ins. Co. v. 115-123 W. 29th St. Owners Corp.,
  275 A.D.2d 604, 713 N.Y.S.2d 38 (1st Dep't 2000) ......................................................... 9

General Phoenix Corp. v. Cabot,
  300 N.Y. 87 (1949) ........................................................................................................... 9

Hartford Acc. & Indem. Co. v. Wesolowski,
33 N.Y.2d 169 (1973) .......................................................................................................... 10

Mallard Constr. Corp. v. County Federal Savings and Loan Assoc.,
32 N.Y.2d 285 (1973) .......................................................................................................... 10

Saks v. Nicosia Contracting Corp.,
215 A.D.2d 832, 625 N.Y.S.2d 758 (3d Dep't 1995) .......................................................... 10

Schmidt v. Magnetic Head Co.,
97 A.D.2d 151, 468 N.Y.S.2d 649 (2d Dep't 1983) ........................................................ 9, 13

State of New York v. Peerless Ins. Co.,
108 A.D.2d 385, 489 N.Y.S.2d 213 (1st Dep't 1985) ........................................................... 9

W.W.W. Assocs., Inc. v. Giancontieri,
77 N.Y.2d 157, 565 N.Y.S.2d 440 (1990) ............................................................................ 9

**State Statutes**

NY CPLR § 5001 *et seq*. ............................................................................................... *passim*

**Federal Rules**

Fed.R.Civ.P. 56 ........................................................................................................................ 7

## **PRELIMINARY STATEMENT**

Plaintiff Illinois National Insurance Company and each of its affiliates and subsidiaries ("Illinois National") hereby moves for summary judgment on the sole count of its complaint for breach of contract.

On or about November 10, 2000, defendant United States Fidelity And Guaranty ("USF&G") executed an Obligation Bond, USF&G Bond No. KF 5673 (the "Bond"), with Illinois National as Obligee under the Bond. Pursuant to the Bond, USF&G agreed to act as surety for the payment of up to the maximum penal sum of Nine Hundred Sixteen Thousand Nine Hundred Fifty Eight Dollars ($916,958).

USF&G's obligations under the Bond are simple and straightforward. Indeed, throughout the Bond, USF&G expressly and repeatedly waived the right to question or object in any way to any demand by Illinois National for payment under the Bond. Thus,

- The Bond specifically states that, upon demand by Illinois National, USF&G "<u>shall pay to [Illinois National] the amount of such Demand</u>" within five business days, and that "[Illinois National's] Demand to the Surety [USF&G] for the amount due . . . <u>shall be absolute proof of the existence and extent of</u>" USF&G's liability to Illinois National under the Bond. Bond ¶ 1 (emphases added).

- USF&G expressly granted Illinois National the right to recover the full amount of the Bond, if USF&G cancelled the Bond and Illinois National did not thereafter receive other collateral "acceptable to [Illinois National] (<u>in its sole discretion</u>) to replace the Bond." Id. ¶ 5 (emphasis added).

- USF&G expressly waived "to the fullest extent permitted by applicable law each and every right" to contest Illinois National's "computation of the Obligations or the application of the Bond Collateral by [Illinois National] to the Obligations." Id. ¶ 2.

- USF&G expressly waived "to the fullest extent permitted by applicable law each and every right which it may have to seek reimbursement, restitution or recovery of any Bond Collateral." Id. ¶ 2.

- USF&G expressly waived any and all of its legal and equitable defenses. Id. ¶ 4.

Despite this clear and unambiguous language, known and agreed to by USF&G, USF&G has ignored Illinois National's Demand for payment. No portion of the $916,958 demanded has been paid by USF&G, necessitating the filing of the instant lawsuit and this motion for summary judgment.

Put simply, a Demand has been made, and, under the express terms of the Bond, USF&G must tender payment. Accordingly, summary judgment should be granted in favor of Illinois National in the base amount of $916,958. In addition to the base amount, Illinois National should be awarded prejudgment interest totaling at least $ 290,311.42, and its reasonable fees and costs in bringing this action, pursuant to Paragraph 3 of the Bond and NY CPLR § 5001 et seq.

### STATEMENT OF UNDISPUTED FACTS[1]

On or about November 10, 2000, in connection with insurance provided to Petrocelli Electric Co., Inc. ("Petrocelli") by Illinois National, Petrocelli, as Principal, and USF&G, as Surety, executed and delivered an Obligation Bond, Bond No. KF 5673 (the "Bond") for the payment of up to the maximum penal sum of Nine Hundred Sixteen Thousand Nine Hundred Fifty Eight Dollars

---

[1] Documents supporting each of these undisputed facts are attached to the respective Declarations of Yoav M. Griver and Michelle Levitt, accompanying this motion. Also included as part of this motion is a Statement of Undisputed Facts pursuant to Local Civil Rule 56.1.

Michelle Levitt is an Associate General Counsel to American International Group, Inc. ("AIG"). Her responsibilities include the representation of Illinois National in connection with the monies owed to Illinois National by USF&G under the Bond. Levitt Decl. ¶¶ 1-2. Yoav Griver is outside counsel to Illinois National in this action. Griver Decl. ¶ 1.

($916,958), naming Illinois National and each of its affiliates and subsidiaries as Obligee. A true and correct copy of the Bond is attached as Exhibit A to the Declaration of Michelle Levitt ("Levitt Decl.").

**Illinois National's Entitlement To**
**The Maximum Penal Sum Of The Bond**

Paragraph 1 of the Bond states:

> Within five (5) business days[2] of Surety's receipt of a demand for payment under this Bond ("Demand"), Surety shall pay to Obligee the amount of such Demand. <u>The Obligee's Demand to the Surety for the amount due</u>, either <u>as security</u> or for payment or for reimbursement pursuant to the Agreement(s) <u>shall be absolute proof of the existence and extent of the liability of the Principal and Surety to the Obligee hereunder</u>.

Bond ¶ 1 (emphases added).

Paragraph 5 of the Bond states, in relevant part:

> This Bond may be canceled at any time upon ninety (90) days advance written notice from Surety to Obligee. It is understood and agreed that the <u>Obligee may recover the full amount of the Bond (less any previous amounts paid to Obligee under the Bond) if the Surety cancels or nonrenews the Bond and, within thirty (30) days prior to the effective date of cancellation or nonrenewal, the Obligee has not received collateral from Principal acceptable to Obligee **(in its sole discretion)** to replace the Bond</u>.

Bond ¶ 5 (emphases added).

---

[2] Originally, Paragraph 1 of the Bond provided for "ten (10) business days." Bond ¶ 1. However, on November 10, 2000, USF&G executed a Rider to the Bond changing ten business days to five business days. <u>See</u> Rider to Bond (attached as part of Exhibit A to the Levitt Decl.).

Paragraph 2 of the Bond states:

> In the event that Obligee shall demand the entire penal sum of the Bond under a Demand (less any previous amounts paid to Obligee under the Bond), <u>Obligee shall hold all funds ("Bond Collateral") received as security for the Obligations</u> and shall apply such funds to the Obligations from time to time <u>in its sole discretion</u>. At such time as Obligee determines <u>in its sole discretion</u> that all of the Obligations are fully and finally paid and such payment is not subject to avoidance or other turnover, Obligee shall return to the Surety the unapplied portion of the Bond Collateral. <u>The Surety</u>, whether in its capacity as surety or subrogee of the Principal, <u>waives, to the fullest extent permitted by applicable law each and every right which it may have to contest Obligee's computation of the Obligations or the application of the Bond Collateral by the Obligee to the Obligations</u>, and waives, to the fullest extent permitted by applicable law, each and every right which it may have to seek reimbursement, restitution or recovery of any Bond Collateral.

Bond ¶ 2 (emphases added). In turn, "Obligations" is defined as "the sums due <u>or to become due</u> from [Petrocelli] to [Illinois National] under the Agreements." Id. at p. 1 (emphasis added).

"USF&G cancelled the Bond effective October 7, 2004." USF&G Answer ¶ 16. (A true and correct copy of USF&G's Answer is annexed as Exhibit B to the Declaration of Yoav M. Griver ("Griver Decl.")). Thereafter, in a letter dated September 23, 2004, and in accordance with Paragraphs 1, 2 and 5 of the Bond, Illinois National made a demand for payment "as security" in the amount of the maximum penal sum of the Bond. See Levitt Decl. ¶ 5. Specifically, the September 23, 2004 demand letter (the "Demand") stated:

> Re: Payment Demand
> Principal: Petrocelli Electric Co., Inc.
> Bond No. KF 5673
> Amount: $916,958.00
>
> In accordance with the provisions of the above bond, Petrocelli Electric Co., Inc. (the "Principal") <u>having failed to provide</u>

4

> successive security to replace this bond, Illinois National Insurance Company (the"Obligee") demands payment in the amount of Nine Hundred Sixteen Thousand Nine Hundred Fifty Eight Dollars ($916,958.00).

Levitt Decl., Ex. B (emphasis added).

Despite the Demand, no payment was received from USF&G. Levitt Decl. ¶ 6. To date, the Demand remains unanswered, and no payment on the Bond has ever been received by Illinois National. Id. ¶ 7. Further, the Obligations from Petrocelli to Illinois National have not been fully and finally paid. Id. ¶ 8.

**Illinois National's Entitlement To Prejudgment Interest
And Its Reasonable Fees And Costs In Enforcing The Bond**

Paragraph 3 of the Bond states:

> Failure to pay or reimburse the Obligee as herein provided shall cause the Surety to be additionally liable for any and all reasonable costs and expenses, including attorney's fees and interest, incurred by the Obligee in enforcing this bond, such liability to be in addition to the bond penalty.

Bond ¶ 3 (emphasis added). Annexed as Exhibit C to the Griver Decl. is a calculation of the prejudgment interest owed Illinois National by USF&G as of April 7, 2008. The total amount of such interest is $ 290,311.42.

**Other Relevant Provisions Of The Bond**

In other paragraphs of the Bond, USF&G expressly waived any and all of its legal and equitable defenses, and agreed to New York as its choice of law and forum.

Paragraph 4 of the Bond states:

<u>Surety's obligations hereunder shall not be affected by</u> (i) any failure by Obligee to assert any claim or demand or enforce any right or remedy against Principal or its property, or any other party liable with respect to the obligations, (ii) any failure to perfect an interest in, or any release, impairment or other diminution of, any collateral (including, but not limited to, rights of recoupment or setoff) held by Obligee which secures any of the obligations, (iii) any matter or proceeding arising in connection with any modification, limitation, discharge, assumption, or reinstatement with respect to any Agreements or Obligations, (iv) any modification of or amendment to any Agreements or Obligations without Surety's consent or prior notification provided that the penal sum of the Bond may not be increased without the consent of Surety; however, failure to give such consent will not prevent Obligee from drawing up to the full amount of the Bond (less any previous amounts paid to Obligee under the Bond) either as security or for payment or for reimbursement under the agreements, or (v) <u>any other circumstance which might otherwise constitute a legal or equitable discharge or defense for Surety</u>.

Bond ¶ 4 (emphases added).

Paragraph 7 of the Bond states:

The laws of the State of New York shall be applicable in determining the rights and obligations of the parties hereto, and the courts of the State of New York, including the United States District Court for the Southern District of New York shall have the sole jurisdiction over any dispute arising out of enforcement of this Bond by the Obligee.

Bond ¶ 7.

**Relevant Procedural History**

On September 21, 2007, Illinois National filed a complaint against USF&G in this Court, seeking judgment against USF&G for the sum of $916,958, plus Illinois National's

6

reasonable costs and expenses, including attorneys fees and interest, incurred in enforcing the Bond, and for such other and further relief as the Court deems just, equitable and proper. See Complaint (a true and correct copy of the Complaint is annexed to the Griver Decl. as Exhibit A).

On December 12, 2007, USF&G served its answer to the Complaint. See Answer (Griver Decl., Ex. B). In addition to standard denials, USF&G asserted 3 affirmative defenses in its Answer. See Answer ¶¶15-17. Each of these purported defenses is precluded by the plain language of the Bond. See Bond ¶ 4 ("Surety's obligations here shall not be affected by ... any other circumstance which might otherwise constitute a legal or equitable discharge or defense for Surety.").

On February 25, 2008, the parties appeared before the Court for the Initial Status Conference. At that conference, Illinois National argued that, based on the plain language of the Bond, there was no need for discovery. Griver Decl. ¶ 6. In turn, counsel for USF&G insisted that discovery was necessary. Id. The Court ordered expedited discovery, to be completed by April 4, 2008, with dispositive motions to be filed by April 7. Id. ¶ 7. This motion for summary judgment follows.

## ARGUMENT
## SUMMARY JUDGMENT SHOULD BE GRANTED IN ILLINOIS NATIONAL'S FAVOR

### I.   THE LEGAL STANDARD ON SUMMARY JUDGMENT

A party is entitled to summary judgment when no genuine issue of material fact exists, and that party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Moreover, in actions such as this one, where "'a question of

intention is determinable by written agreements, the question is one of law, appropriately decided...on a motion for summary judgment.'" Arcadian Phosphates, Inc. v. Arcadian Corp., 884 F.2d 69, 73 (2d Cir. 1989) (citations omitted); Municipal Capital Appreciation Partners I, L.P. v. Page, 181 F. Supp. 2d 379, 390 (S.D.N.Y. 2002) (summary judgment appropriate in breach of contract action "where the language of the contract is unambiguous, and reasonable persons could not differ as to its meaning").

"Because of the simplicity of the issues in dispute, 'suits to enforce promissory notes and guaranties are particularly appropriate for disposition by summary judgment.'" Federal Deposit Ins. Corp. v. LDM Props., Inc., No. CV-94-5778 (CPS), 1996 WL 449346, *3 (E.D.N.Y. July 29, 1996) (citations omitted); Cavendish Traders, Ltd. v. Nice Skate Shoes, Inc., 117 F. Supp. 2d 394, 398 n.6 (S.D.N.Y. 2000) (same). "On a motion for summary judgment to enforce a written guaranty, the creditor need only prove the existence of a guaranty, the underlying debt, and the guarantor's failure to perform under the guaranty." City of New York v. Clarose Cinema Corp., 256 A.D.2d 69, 71, 681 N.Y.S.2d 251 (1st Dep't 1998).[3] The undisputed facts before the Court illustrate such a case. The Bond is established by its submission to the Court. The existence of the underlying debt and failure of USF&G to perform under the terms of the Bond are established by the sworn affidavit of Michelle Levitt and the attached exhibits. The relevant language of the Bond is clear and unambiguous, and the obligation of USF&G is beyond doubt. As such, summary judgment is appropriate at this time.

---

[3] New York law governs the determination of this action. See Bond ¶ 7 (attached as Levitt Decl., Ex. A).

## II. USF&G IS LIABLE BECAUSE THERE HAS BEEN A DEMAND MADE UNDER THE BOND

"As far back as 1889, the Court of Appeals said that 'No citation of authorities is needed to show that the contracts of sureties are to be construed like any other contracts.'" Int'l Fidelity Ins. Co. v. County of Rockland, 98 F. Supp. 2d 400, 405 (S.D.N.Y. 2000) (quoting People v. Backus, 117 N.Y. 196, 201 (1889)).[4] And, the fundamental rule of contract interpretation is that clear and complete writings should be enforced according to their terms. AMEX Assurance Co. v. Carpides, 179 F. Supp. 2d 309, 318 (S.D.N.Y. 2002). See also W.W.W. Assocs., Inc. v. Giancontieri, 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440 (1990) ("A familiar and eminently sensible proposition of law is that, when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms."); Continental Ins. Co. v. 115-123 W. 29th St. Owners Corp., 275 A.D.2d 604, 605, 713 N.Y.S.2d 38, 39 (1st Dep't 2000) ("It is well settled that when the terms of an agreement are clear and unambiguous, the court will not look beyond the four corners of the agreement and will enforce the writing according to its terms."); Schmidt v. Magnetic Head Co., 97 A.D.2d 151, 154, 468 N.Y.S.2d 649, 654 (2d Dep't 1983) ("courts may enforce contracts, but not rewrite them").

Moreover, because USF&G's liability can be determined by reference to the four corners of the document; no additional factual discovery is required. Under New York law, the construction and interpretation of an unambiguous written contract is an issue of law. AMEX

---

[4] See also General Phoenix Corp. v. Cabot, 300 N.Y. 87, 92 (1949) ("The interpretation of a contract of suretyship is governed by the standards which govern the interpretation of contracts in general.") (citing Restatement 1st of Security § 88 (1941)); State of New York v. Peerless Ins. Co., 108 A.D.2d 385, 390, 489 N.Y.S.2d 213, 218 (1st Dep't 1985) ("The law is well-established in this State that the rule of construction of contracts 'is not changed because the defendant is a surety.'") (quoting Utica City Nat'l Bank v. Gunn, 222 N.Y. 204, 207 (1918)).

Assurance, 179 F. Supp. 2d at 317; see also Hartford Acc. & Indem. Co. v. Wesolowski, 33 N.Y.2d 169, 172 (1973) ("it is the responsibility of the court to interpret written instruments"); Mallard Constr. Corp. v. County Federal Savings and Loan Assoc., 32 N.Y.2d 285, 291 (1973) (same); Saks v. Nicosia Contracting Corp., 215 A.D.2d 832, 833, 625 N.Y.S.2d 758, 759 (3d Dep't 1995) (the interpretation of a contract is question of law for the court).

USF&G chose to cancel the Bond effective October 7, 2004. USF&G Answer ¶ 16 (Griver Decl., Ex. B). Upon cancellation, Illinois National had the right to "recover the full amount of the Bond" if "within thirty (30) days prior to the effective date of cancellation" Illinois National did not receive successive "collateral from [Petrocelli] acceptable to [Illinois National] (in its sole discretion) to replace the Bond." Bond ¶ 5 (Levitt Decl., Ex. A) (emphasis added). Exercising that sole discretion, Illinois National made a demand for payment "as security" in the full amount of the Bond on September 23, 2004. Levitt Decl. ¶ 5 and Ex. B (Demand Letter). By the express terms of the Bond, Illinois National's Demand to USF&G – standing alone – constitutes "absolute proof of the existence and extent of the liability of the Principal [Petrocelli] and Surety [USF&G] to the Obligee [Illinois National] hereunder." Bond ¶ 1 (emphasis added).

Further, Paragraph 2 of the Bond states that Illinois National "shall hold all funds ("Bond Collateral") received as security for the Obligations and shall apply such funds to the Obligations from time to time in its sole discretion" until "such time as [Illinois National] determines in its sole discretion that all of the Obligations are fully and final paid." Bond ¶ 2 (Levitt Decl., Ex. A) (emphases added). In this regard, USF&G expressly waived "to the fullest extent permitted by applicable law each and every right which it may have to contest [Illinois National]'s computation of the Obligations or the application of the Bond Collateral by [Illinois National] to the

10

Obligations." Id. The Bond's language is clear and unambiguous, and was known and agreed to by USF&G from the outset.

After USF&G chose to cancel the Bond, Illinois National did not receive other collateral from Petrocelli acceptable to Illinois National to replace the Bond. Levitt Decl. ¶ 5. Illinois National therefore made demand upon the Surety, USF&G, for the maximum penal amount of the Bond. See id. and Ex. B. Under the plain language of the Bond, that Demand (i) is "absolute proof" of "the existence" of USF&G's liability (Bond ¶ 1); (ii) "absolute proof" of the "extent of" USF&G's liability (id.); and (iii) permits Illinois National to hold and apply the $916,958 to the past and future amounts due from Petrocelli without contest from USF&G, until such time as Illinois National determines "in its sole discretion" that all of Petrocelli's Obligations are "fully and finally paid" (id. ¶ 2). Despite this language, the Demand has gone unanswered and unpaid, and no payment on the Bond has ever been received by Illinois National. Further, Petrocelli's Obligations to Illinois National have not been fully and finally paid. See Levitt Decl. ¶¶ 6-8. Accordingly, USF&G is liable under the terms of the Bond for the maximum penal sum of $916,958, and summary judgment is appropriate.

### III. USF&G IS LIABLE FOR THE ATTORNEYS' FEES AND COSTS ASSOCIATED WITH ENFORCEMENT OF THE BOND

Paragraph 3 of the Bond states that "[f]ailure to pay or reimburse the Obligee as herein provided shall cause the Surety to be additionally liable for any and all reasonable costs and expenses, <u>including attorney's fees and interest, incurred by the Obligee in enforcing this bond, such liability to be in addition to the bond penalty</u>." Bond ¶ 3 (emphasis added). See also Norwest Fin., Inc. v. Fernandez, 121 F. Supp. 2d 258, 262 (S.D.N.Y. 2000) ("it is clear that the parties may by

contract agree to permit recovery of attorney's fees as part of a plaintiff's expenses in prosecuting suit"). By the explicit terms of the Bond, USF&G is responsible for all costs and fees, including reasonable attorney's fees, associated with this action.

## IV.    PREJUDGMENT INTEREST SHOULD BE AWARDED FROM OCTOBER 2004

Under New York law, a plaintiff who prevails on a claim for breach of contract is entitled to prejudgment interest <u>as a matter of right</u> at the New York statutory rate of 9% per annum computed from the earliest ascertainable date the cause of action existed. <u>See</u> NY CPLR §§ 5001, 5002, 5004 (McKinney 2006). <u>See also</u> <u>Varda Inc. v. Insurance Co. of N. Am.</u>, 45 F.3d 634, 640 (2d Cir. 1995) (insurance company must pay prejudgment interest at New York statutory rate); <u>Spector v. Mermelstein</u>, 485 F.2d 474, 482 (2d Cir. 1983) (award of prejudgment interest mandatory); <u>Julien J. Studley, Inc. v. Gulf Oil Corp.</u>, 425 F.2d 947, 949-50 (2d Cir. 1969) (awarding prejudgment interest at 9% "as a matter of right" in breach of contract action); <u>Marx & Co. v. Diners' Club, Inc.</u>, 405 F. Supp. 1, 3 (S.D.N.Y. 1975) (prejudgment interest computed from earliest ascertainable date), <u>aff'd in part, rev'd in part on other grounds</u>, 505 F.2d 505 (2d Cir. 1977).

Here, it is undisputed that Illinois National demanded payment under the Bond on September 23, 2004 in the amount of $916,958. Demonstrably, therefore, the earliest ascertainable date a cause of action existed against USF&G for non-payment under the Bond is October 1, 2004, and pre-judgment interest at 9% per annum should be awarded by the Court commencing from that date. <u>See</u> NY CPLR §§ 5001, 5002, 5004 (McKinney 2006). A calculation of the pre-judgment interest owed as of April 7, 2008 in the total amount of $ 290,311.42, is annexed as Exhibit C to the Griver Decl.

V. **USF&G EXPRESSLY AGREED TO WAIVE ALL AFFIRMATIVE DEFENSES IN THE BOND; ACCORDINGLY, THE THREE PURPORTED AFFIRMATIVE DEFENSES RAISED BY USF&G IN ITS ANSWER SHOULD BE STRUCK**

Paragraph 4 of the Bond states, among other things, that "Surety's obligations hereunder shall not be affected by ... any other circumstance which might otherwise constitute a legal or equitable discharge or defense for Surety." Bond ¶ 4. In USF&G's answer, it asserts three affirmative defenses. See Answer, ¶¶ 15-17. The quoted language of Paragraph 4 of the Bond, however, constitutes a waiver of all affirmative defenses – legal or equitable – that USF&G might otherwise have asserted. Therefore, the affirmative defenses asserted by USF&G should be struck. AMEX Assurance, 179 F. Supp. 2d at 318 (writings should be enforced according to their terms); Schmidt, 97 A.D.2d at 154, 468 N.Y.S.2d at 654 ("courts may enforce contracts, but not rewrite them"). Certainly, the affirmative defenses cannot prevent summary judgment from being granted in Illinois National's favor.

## CONCLUSION

For all the foregoing reasons, Illinois National respectfully requests that the Court grant its motion for summary judgment in its entirety and direct entry of a judgment against defendant USF&G and in Illinois National's favor in the principal amount of $916,958, plus accruing and unpaid interest in the amount of $290,311.42 as of April 7, 2008 with further interest accruing at 9% interest per annum on the principal amount, and reasonable attorneys' fees, costs and expenses, together with such other relief as the Court deems just and appropriate.

Dated:   New York, New York
         April 7, 2008

                                ZEICHNER ELLMAN & KRAUSE LLP

                                By: _____
                                    Michael S. Davis
                                    Yoav M. Griver
                                    Attorneys for plaintiff Illinois National
                                      Insurance Company
                                    575 Lexington Avenue
                                    New York, New York 10022
                                    (212) 223-0400

## CERTIFICATE OF SERVICE

      ANTHONY ROSARIO, hereby certifies pursuant to 28 U.S.C. 1746 and under penalty of perjury that on the 7th day of April, 2008, a true copy of the within **PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** was served upon Ellen August, Esq., Goetz Fitzpatrick LLP, 1 Penn Plaza, New York, New York 10119-0002 on this date by hand delivery.

Dated: New York, New York
      April 7, 2008

                                                          ANTHONY ROSARIO