UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ILLINOIS NATIONAL INSURANCE COMPANY,

Plaintiff,

- against -

UNITED STATES FIDELITY AND GUARANTY,

Defendant.

Case No.:  07 Civ. 8248 (JFK)

## PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Michael S. Davis
Yoav M. Griver
ZEICHNER ELLMAN & KRAUSE LLP
575 Lexington Avenue
New York, New York 10022
(212) 223-0400
Attorneys for plaintiff Illinois National
  Insurance Company

June 30, 2008

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... ii

PRELIMINARY STATEMENT ............................................................................. 1

ARGUMENT .......................................................................................................... 3

    I.  USF&G'S OPPOSITION DOES NOT RAISE ANY
       DISPUTED ISSUE OF MATERIAL FACT SUFFICIENT TO
       PREVENT SUMMARY JUDGMENT ............................................................ 3

    II.  USF&G REMAINS LIABLE FOR ATTORNEYS' FEES
        AND INTEREST .......................................................................................... 7

    III. USF&G'S REQUEST FOR AN INDEFINITE STAY
        SHOULD BE DENIED ................................................................................. 8

CONCLUSION ....................................................................................................... 10

# TABLE OF AUTHORITIES

**Federal Cases**

AMEX Assurance Co. v. Carpides, 179 F. Supp. 2d 309 (S.D.N.Y. 2002) ............ *passim*

Cavendish Traders, Ltd. v. Nice Skate Shoes, Inc., 117 F. Supp. 2d 394
    (S.D.N.Y. 2000) ................................................................................................ 3

Hetchkop v. Gundolt Carpet Workroom, Inc., 841 F. Supp. 113
    (S.D.N.Y. 1994) ............................................................................................... 6

Municipal Capital Appreciation Partners I, L.P. v. Page, 181 F. Supp. 2d
    379 (S.D.N.Y. 2002) ........................................................................................ 3

Orange Chicken LLC v. Nambe Mills, Inc., 00 Civ. 4730 (AGS), 2000
    U.S. Dist. LEXIS 1824 (S.D.N.Y. Dec. 19, 2000) ..................................... 8 , 9

**State Cases**

Continental Ins. Co. v. 115-123 W. 29th St. Owners Corp., 275 A.D.2d
    604, 713 N.Y.S.2d 38 (1st Dep't 2000) ............................................... 3, 5, 9

Mitchell v. Mitchell, 82 A.D.2d 649, 440 N.Y.S.2d 54 (2d Dep't 1981) ...................... 5

Schmidt v. Magnetic Head Co., 97 A.D.2d 151, 468 N.Y.S.2d 649 (2d
    Dep't 1983) .............................................................................................. 5, 7

W.W.W. Assocs., Inc. v. Giancontieri, 77 N.Y.2d 157, 565 N.Y.S.2d 440
    (1990) ........................................................................................................... 3

**State Statutes**

NY CPLR § 5001 .......................................................................................... 2, 7, 8

## PRELIMINARY STATEMENT

The instant litigation is a narrow one. By the sole count of its complaint, plaintiff Illinois National Insurance Company and each of its affiliates and subsidiaries ("Illinois National") asks the Court to enforce the plain language of Obligation Bond No. KF 5673 (the "Bond"). The Bond states

> <u>Within five (5) business days</u> of Surety's [United States Fidelity and Guaranty's] receipt of a demand for payment under this Bond ("Demand"), <u>Surety shall pay to the Obligee [Illinois National] the amount of such Demand.</u>  The Obligee's [Illinois National's] Demand to the Surety [USF&G] for the amount due, either as security or for payment or for reimbursement pursuant to the Agreement(s), <u>shall be absolute proof of the existence and extent of the liability</u> of the Principal [Petrocelli Electric Co., Inc.] and the Surety [USF&G] to the Obligee [Illinois National] hereunder.

Bond ¶ 1 (emphases added). USF&G admits[1] (and could not properly deny) that Illinois National long ago met the few simple requirements of the Bond:

- On or about November 10, 2000, USF&G signed the Bond, which provided for the payment of up to $916,958.  <u>See</u> Bond (copy attached as Exhibit A to the Declaration of Michelle Levitt); <u>see also</u> Illinois National Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1  ("Statement of Facts") ¶ 3.

- USF&G cancelled the Bond effective October 7, 2004.  Answer ¶ 16; Statement of Facts ¶ 11.

- The Bond expressly provides that, if the Bond is cancelled by USF&G: "[Illinois National] may recover the full amount of the Bond . . . if . . . [Illinois National] has

---

[1] Local Rule 56.1(c) provides

> Each numbered paragraph in the statement of material facts set forth in the statement of facts required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.

Contrary to this Rule, USF&G failed to serve a statement controverting Illinois National's Statement of Undisputed Facts paragraph by paragraph. USF&G's failure means that every fact set forth in Illinois National's Statement of Facts is "deemed to be admitted" for purposes of this Summary Judgment Motion.

not received collateral from [Petrocelli] acceptable to [Illinois National] (in its sole discretion) to replace the Bond." Bond ¶ 5; Statement of Facts ¶ 5.

• On September 23, 2004, Illinois National demanded payment for the full amount of the Bond ($916,958) because Petrocelli "failed to provide successor security" acceptable to Illinois National to replace the Bond. September 23, 2004 Demand Letter (Levitt Decl., Ex. B); Levitt Decl. ¶ 5; Statement of Facts ¶¶ 12-14.

• The Bond states: "Within five (5) business days of [USF&G's] receipt of a demand . . . [USF&G] shall pay to [Illinois National] the amount of such Demand." Further, [Illinois National's] Demand to [USF&G] for the amount due . . . as security . . . shall be absolute proof of the existence and extent of the liability of . . . [USF&G] to [Illinois National] hereunder. Bond ¶ 1 (emphases added); Statement of Facts ¶ 4.

• To date, Illinois National's demand remains unanswered, and no payment on the Bond has ever been received by Illinois National. Levitt Decl. ¶¶ 6-7; Statement of Facts ¶¶ 15-16.

Thus, under the express terms of the Bond, the "existence and extent" of USF&G's liability was "absolutely" established by the September 23, 2004 demand letter (the "September 2004 Demand"), and USF&G "shall pay" Illinois National the amount demanded. Paragraph 3 of the Bond similarly authorizes Illinois National's request for reasonable attorneys' fees and costs, and NY CPLR § 5001 et seq. requires the award of prejudgment interest to Illinois National. Accordingly, Illinois National should be granted summary judgment for the entire amount sought – the principal amount of $916,958, plus accruing and unpaid interest in the amount of at least $290,311.42, and reasonable attorneys' fees, costs and expenses. See SJ Mem. at 2-14 (and supporting papers and exhibits).

In a vain effort to continue avoiding its obligations under the Bond, USF&G purports to identify issues of disputed fact. Opp. Mem. at 1-2. None of these supposed factual disputes are material, however, because none can prevent summary judgment in Illinois National's favor. Indeed, each of these purported "disputes" are addressed and resolved by specific language in the Bond – language known and agreed to by USF&G. See Argument, Points I and II.

USF&G also asks for an indefinite stay of this action, in deference to an arbitration recently commenced by another AIG entity, National Union Fire Insurance Company of Pittsburgh, PA, against Petrocelli. There is no need for a stay. Discovery has closed in this action, the motion for summary judgment is fully briefed, and the existence and extent of USF&G's liability to Illinois National is readily established within the four corners of the Bond. Accordingly, no justification exists for delaying summary judgment in Illinois National's favor. See Argument, Point III.

### ARGUMENT

"Suits to enforce promissory notes and guaranties are particularly appropriate for disposition by summary judgment." Cavendish Traders, Ltd. v. Nice Skate Shoes, Inc., 117 F. Supp. 2d 394, 398 n.6 (S.D.N.Y. 2000). Such is the case here, where the Bond "is unambiguous, and reasonable persons could not differ as to its meaning." Municipal Capital Appreciation Partners I, L.P. v. Page, 181 F. Supp. 2d 379, 390 (S.D.N.Y. 2002); SJ Mem. at 7-8 (and cases cited).

## I.    USF&G'S OPPOSITION DOES NOT RAISE ANY DISPUTED ISSUE OF MATERIAL FACT SUFFICIENT TO PREVENT SUMMARY JUDGMENT

USF&G contends that summary judgment is inappropriate because certain factual issues exist that first must be resolved. Opp. Mem. at 4-8. USF&G is wrong. The Bond's plain language – language USF&G does its best to ignore – precludes all of USF&G's purported issues.

It is a fundamental principle of contract interpretation that clear and complete writings should be enforced according to their terms. AMEX Assurance Co. v. Carpides, 179 F. Supp. 2d 309, 318 (S.D.N.Y. 2002).[2] Here, under the clear and unambiguous terms of the Bond, the

---

[2] See also W.W.W. Assocs., Inc. v. Giancontieri, 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440 (1990) ("when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms"); Continental Ins. Co. v. 115-123 W. 29th St. Owners Corp., 275 A.D.2d 604, 605, 713 N.Y.S.2d 38, 39 (1st Dep't 2000) ("It is well settled that when the terms of an agreement are clear and unambiguous, the court will not look beyond the four corners of the agreement and will enforce the writing according to its terms.").

existence and extent of USF&G's liability was absolutely established in September 2004, when Illinois National sent its demand letter seeking the full amount of the penal sum as security. <u>See</u> September 2004 Demand (Levitt Decl., Ex. B).

The terms of the Bond itself, which govern the transaction, make it clear that payment is due five days after demand by Illinois National. <u>See</u> Bond ¶ 1. No language in the Bond supports USF&G's position that Illinois National first must prove "whether any Obligations under the Agreements remain outstanding" (Opp. Mem. at 7), or "whether the amount demanded . . . remains a liability" (<u>id.</u>). To the contrary, the language of the Bond explicitly contradicts USF&G's contentions, stating that the September 2004 Demand, standing alone, is "<u>absolute proof of the existence and extent of</u>" USF&G's liability. Bond ¶ 1.

Other Bond provisions – all of which provide Illinois National with "sole discretion" – also contradict USF&G's unsupported contention that it has the right to question, revisit, or dispute the propriety of Illinois National's September 2004 Demand:

- Illinois National "may present one or more Demands at any time <u>in its sole discretion</u>." Bond ¶ 1.

- If USF&G cancels the Bond, Illinois National can demand and "recover the full amount of the Bond" if replacement collateral acceptable to Illinois National "<u>in its sole discretion</u>" is not provided by Petrocelli. Bond ¶ 5.

- Illinois National has the right to hold the entire penal sum of the Bond (the "Bond Collateral") as security and apply it "to the Obligations from time to time <u>in its sole discretion</u>." Bond ¶ 2.

- Illinois National gets to determine "<u>in its sole discretion</u>" if and when "all of the Obligations have been fully and finally paid" by the Bond Collateral. Bond ¶ 2.

Clinching summary judgment are the Bond's waiver provisions, whereby USF&G waived any right to question or contest Illinois National's actions:

- USF&G, whether as surety or subrogee of Petrocelli, agreed to waive "to the fullest extent permitted by applicable law each and every right which it may have to

contest [Illinois National's] computation of the Obligations or the application of the Bond Collateral by [Illinois National] to the Obligations, and waives, to the fullest extent permitted by applicable law, each and every right which it may have to seek reimbursement, restitution or recovery of any Bond Collateral." Bond ¶ 2.

- USF&G agreed that its obligations under the Bond "shall not be affected by . . . (v) any other circumstance which might otherwise constitute a legal or equitable discharge or defense for [USF&G]." Bond ¶ 4.

USF&G may now regret the bargain it struck with Illinois National, but such regrets are legally irrelevant. See, e.g., AMEX Assurance, 179 F. Supp. 2d at 318 (writings will be enforced according to their terms); Continental Ins. Co. v. 115-123 W. 29th St. Owners Corp., 275 A.D.2d 604, 605, 713 N.Y.S.2d 38, 39 (1st Dep't 2000) (same); Schmidt v. Magnetic Head Co., 97 A.D.2d 151, 154, 468 N.Y.S.2d 649, 654 (2d Dep't 1983) ("courts may enforce contracts, but not rewrite them"); Mitchell v. Mitchell, 82 A.D.2d 649, 440 N.Y.S.2d 54 (2d Dep't 1981) (courts "will not imply a contract term that the parties failed to insert").

Nowhere in the Bond is there language supporting USF&G's contention that Illinois National's right to recover under the Bond is contingent upon Illinois National vigorously "pursu[ing] its September 2004 demand for the full penal sum" (Opp. Mem. at 5) or "respond[ing] to the July 26, 2005 inquiry from USF&G" (id. at 4).[3] To the contrary, any such assertions are conclusively refuted by Paragraph 1 of the Bond, which states that (i) Illinois National's September 2004 Demand for $916,958 "shall be absolute proof of the existence and extent of" USF&G's liability to Illinois National, and (ii) USF&G "shall pay" the amount demanded within five days of

---

[3] In its July 26, 2005 letter (Opp. Mem., Ex. E), USF&G never requested a response from Illinois National, but did demand that Petrocelli "provide satisfactory documentation that it has met its obligation to AIG on the above-captioned bond." Tellingly, in their respective affidavits, neither Petrocelli nor USF&G ever assert that Petrocelli responded to USF&G's demand or provided such documentation. In any event, under Paragraph 5 of the Bond, only Illinois National has the right "in its sole discretion" to decide if acceptable replacement security was provided. And "[a]fter USF&G cancelled the Bond, Illinois National did not receive successor collateral from Petrocelli acceptable to Illinois National to replace the Bond." Statement of Facts ¶ 12; Levitt Decl. ¶ 5.

receiving the Demand.  Moreover, USF&G's express waiver of all its legal or equitable defenses (Bond ¶¶ 2, 4) entirely precludes its attempt to raise "abandonment" or "laches" defenses as a bar to summary judgment here.

Likewise, USF&G cannot successfully maintain that Illinois National's January 19, 2007 Demand somehow replaced and eliminated the September 2004 Demand, and the breach of contract resulting from USF&G's failure to honor the September 2004 Demand within five days. See Opp. Mem. at 7.  The Bond specifically states that Illinois National "may present one or more Demands at any time in its sole discretion."  Bond ¶ 1.  Further, Illinois National's lawsuit (and the instant summary judgment motion) seeks recovery solely under the September 2004 Demand (see Complaint; SJ Mem. at 2-14), rendering the 2007 Demand irrelevant to this motion.

Finally, USF&G's contention that a "surety cannot be liable for claims that accrued after the cancellation date of a bond" (Opp. Mem. at 5) is equally untenable.  No such general rule exists.  Indeed, the very case cited by USF&G – Hetchkop v. Gundolt Carpet Workroom, Inc., 841 F. Supp. 113 (S.D.N.Y. 1994) – acknowledges that the "liability of a surety on a bond is predicated upon a breach of the conditions of the bond which describe the obligation."  Id. at 116.  The Hetchkop bond contained express language permitting the surety to "cancel its liability as to future assessments under the bond at any time by written notice."  Id.  Here, by contrast, the Bond provides that it is "security for all of [Petrocelli's] Obligations to [Illinois National] under each of the Agreements" (Bond at p. 1 (emphasis added)), and gives Illinois National the right, upon cancellation, to demand from USF&G the entire penal sum of the Bond as Bond Collateral "security for the Obligations."  Id. ¶¶ 1, 2, 5.  The Bond further provides that Illinois National "shall apply" the Bond Collateral "to the Obligations from time to time" until "all of the Obligations are fully and finally paid."  Id. ¶ 2 (emphasis added).  In turn, "Obligations" is defined as "the sums due or to

become due from [Petrocelli] to [Illinois National] under the Agreements." Id. at p. 1 (emphasis added). None of this language can be squared with USF&G's assertion that the Bond Collateral cannot be used for any Obligations that become due after October 7, 2004, the effective date of cancellation.

To sum, in this particular transaction, the parties expressly agreed that Illinois National, and only Illinois National, would determine whether USF&G was liable under the Bond, and for how much. The parties further agreed that Illinois National's Demands would constitute absolute proof. Having agreed to these contractual provisions, USF&G is bound by them. See Schmidt, 97 A.D.2d at 154 ("courts may enforce contracts, but not rewrite them"). Accordingly, USF&G fails to identify a disputed issue of material fact, and Illinois National is entitled to summary judgment in its favor.

## II.  USF&G REMAINS LIABLE FOR ATTORNEYS' FEES AND INTEREST

USF&G's baldly asserts that no interest should be paid until Illinois National "justif[ies] its claim for interest" by demonstrating that "Obligations existed to which the Bond Collateral applied." Opp. Mem. at 8. This assertion contradicts the explicit terms of the Bond. *First*, the September 2004 Demand is "absolute proof" of USF&G's liability for the full penal sum of the Bond. Bond ¶ 1. *Second*, USF&G waived "to the fullest extent permitted by law" each and every right to contest Illinois National's computation of the Obligations or its application of the Bond Collateral to the Obligations. Id. ¶ 2. *Third*, USF&G became responsible for reasonable costs and expenses, including attorneys fees and interest, the moment it failed to pay Illinois National's September 2004 Demand within five days of receipt. See Bond ¶ 3 ("Failure to pay or reimburse [Illinois National] as herein provided shall cause [USF&G] to be additionally liable for any and all reasonable costs and expenses, including attorney's fees and interest, incurred by [Illinois National]

7

in enforcing this bond, such liability to be in addition to the bond penalty.").

Moreover, under New York law, a plaintiff who prevails on a claim for breach of contract is entitled to prejudgment interest <u>as a matter of right</u> at the New York statutory rate of 9% per annum computed from the earliest ascertainable date the cause of action existed. <u>See</u> NY CPLR §§ 5001, 5002, 5004 (McKinney 2006). Here, Illinois National demanded payment under the Bond on September 23, 2004, making October 1, 2004 the earliest ascertainable date a cause of action existed against USF&G for non-payment. A calculation of prejudgment interest owed as of April 7, 2008, totaling $290,311.42, was annexed to Illinois National's moving papers (<u>see</u> Exhibit C to the Griver Declaration). USF&G identifies no mathematical error in that calculation.

## III.  USF&G'S REQUEST FOR AN INDEFINITE STAY SHOULD BE DENIED

USF&G's request for an indefinite stay pending completion of the just-initiated arbitration between National Union and Petrocelli ("Arbitration") (Opp. Mem. at 8-9) should be denied on a number of grounds.

*First*, USF&G has not (and cannot) meet its burden of showing that significant and material issues "common to the arbitration and the courts . . . will finally be determined by the arbitration." <u>Orange Chicken LLC v. Nambe Mills, Inc.</u>, 00 Civ. 4730 (AGS), 2000 U.S. Dist. LEXIS 18214, *28 (S.D.N.Y. Dec. 19, 2000). This action involves one narrow question: did USF&G breach the Bond by not honoring Illinois National's September 2004 Demand for the full amount of the Bond? <u>See</u> Complaint (Griver Decl., Ex. A). By contrast, the Arbitration involves the amounts Petrocelli owes National Union pursuant to certain insurance agreements from 1995 to 2002. <u>See</u> Arbitration Demand (Opp. Mem., Ex. H). Demonstrably, the instant action and the Arbitration involve different agreements, different facts, different parties, and no agreement to arbitrate.

*Second*, USF&G has not (and cannot) meet its burden of showing that the Arbitration will "provide significant insight into, if not actually resolve, the claims asserted in this action." <u>Orange Chicken</u>, 2000 U.S. Dist. LEXIS 18214, at *30. The Arbitration does not involve the Bond, or interpretation of the Bond. By contrast, this entire case can be – and should be – resolved within the four corners of the Bond. <u>See</u> SJ Mem. at 2-14; SJ Reply Mem. at 1-8; <u>Continental Ins. Co.</u>, 275 A.D.2d at 605, 713 N.Y.S.2d at 39 ("It is well settled that when the terms of an agreement are clear and unambiguous, the court will not look beyond the four corners of the agreement and will enforce the writing according to its terms."). Moreover, all required evidence is before the Court: (i) a copy of the Bond has been provided (Levitt Decl., Ex. A) ; (ii) a copy of the September 2004 Demand has been provided (Levitt Decl., Ex. B); and (iii) it is undisputed that USF&G did not pay Illinois National in satisfaction of the September 2004 Demand (Levitt Decl. ¶¶ 6-7; Statement of Facts ¶¶ 15-16). Accordingly, all necessary evidence has been produced to the Court, and there is no disputed issue of fact requiring an indefinite stay in deference to the Arbitration.

*Third*, USF&G has not (and cannot) meet its "burden of showing that . . . the arbitration will be resolved within a reasonable time." <u>Orange Chicken</u>, 2000 U.S. Dist. LEXIS 18214, at *28. The Arbitration has just begun. No panel has been selected or approved, no conferences held, no scheduling order issued, no discovery commenced, and no hearing dates set. Griver Reply Declaration ¶¶ 4-7. More broadly, in weighing whether a stay is appropriate, the Court should bear in mind this action is ready for decision. Discovery has been completed and closed, and Illinois National's summary judgment motion fully briefed. <u>Id.</u> It is respectfully submitted that, under these circumstances, preserving scarce judicial and party resources requires denying the requested stay and enforcing the specific terms of the three-page Bond at issue. <u>AMEX</u>

9

Assurance, 179 F. Supp. 2d at 318 (clear and complete writings should be enforced according to their terms).

## CONCLUSION

For each and every one of the foregoing reasons, and those set forth in its moving papers, Illinois National respectfully requests that the Court (i) deny USF&G's request for an indefinite stay; (ii) grant Illinois National's motion for summary judgment; (iii) direct entry of a judgment against defendant USF&G and in Illinois National's favor in the principal amount of $916,958, plus accruing and unpaid interest in the amount of $290,311.42 as of April 7, 2008 with further interest accruing at 9% interest per annum on the principal amount, and reasonable attorneys' fees, costs and expenses; and (iv) grant such other and further relief as the Court deems just and proper.

Dated:    New York, New York
          June 30, 2008

                                        ZEICHNER ELLMAN & KRAUSE LLP

                                        By: _____
                                           Michael S. Davis
                                           Yoav M. Griver
                                           Attorneys for Plaintiff
                                           575 Lexington Avenue
                                           New York, New York 10022
                                           (212) 223-0400

## CERTIFICATE OF SERVICE

ANTHONY ROSARIO, hereby certifies pursuant to 28 U.S.C. 1746 and under penalty of perjury that on the 30th day of June, 2008, a true copy of the within **REPLY MEMORANDUM OF LAW** was served upon Ellen August, Esq., Goetz Fitzpatrick LLP, 1 Penn Plaza, New York, New York 10119-0002 on this date by hand delivery.

Dated: New York, New York
      June 30, 2008

                                    ANTHONY ROSARIO

527430.v1/10539-014/ar