Michael S. Davis
Yoav M. Griver
ZEICHNER ELLMAN & KRAUSE LLP
575 Lexington Avenue
New York, New York 10022
(212) 223-0400
Attorneys for plaintiff Illinois National
  Insurance Company

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ILLINOIS NATIONAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>- against -<br><br>UNITED STATES FIDELITY AND GUARANTY,<br><br>Defendant. | Case No.:  07 Civ. 8248 (JFK)<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT'S PURPORTED STATEMENT OF UNDISPUTED FACTS** |

Plaintiff Illinois National Insurance Company ("Illinois National"), by its attorneys Zeichner Ellman & Krause LLP, pursuant to Local Rule 56.1, respectfully submits the foregoing Response to the purported Statement of Undisputed Facts submitted by defendant United States Fidelity and Guaranty ("USF&G").

1.    **Alleged Fact:**

On or about November 10, 2000, USF&G, as Surety, issued an Obligation Bond under Bond Number KF 5673 (the "Bond") in favor of Illinois National, as Obligee. The Bond guaranteed the obligations of Petrocelli Electric Co., Inc. ("Petrocelli"), as Principal, under certain insurance policies Illinois National issued to Petrocelli. (Affidavit of Kimberly Zanotta ["Zanotta Affidavit"], Exhibit A)

**Response:**    Undisputed, but incomplete.

The first Whereas Clause of the Bond references both "certain insurance policies on behalf of the Principal" and "certain other agreements with the Principal as may be amended and/or renewed from time to time." The Court is respectfully referred to the Bond itself (Levitt Decl., Ex. A) for a complete embodiment of its terms.

2.    **Alleged Fact:**

Pursuant to paragraph 5 of the Bond, USF&G provided a 90-day notice dated June 30, 2004, in which USF&G informed Illinois National and Petrocelli of the cancellation of the Bond, effective October 7, 2004. (Zanotta Affidavit, Exhibit B)

**Response:**    Undisputed.

3.    **Alleged Fact:**

By letter dated September 23, 2004, Illinois National demanded that USF&G pay $916,958.00, which is the full penal sum of the Bond, on the ground that Petrocelli had failed to provide successive security to replace the Bond, as paragraph 5 of the Bond requires. (Zanotta Affidavit, Exhibit C.)

**Response:**    Undisputed.

4.    **Alleged Fact:**

In a letter dated July 2, 2005, Illinois National asked USF&G for proof of payment under the Bond. (Zanotta Affidavit, Exhibit D)

**Response:**    Undisputed.

5.    **Alleged Fact:**

USF&G responded by letter dated July 26, 2005, which stated that Petrocelli had informed USF&G that the matter had been resolved and that there was a substantial premium refund due Petrocelli. (Zanotta Affidavit, Exhibit E)

**Response:**    Undisputed, but incomplete.

The letter also (i) acknowledges USF&G's receipt of Illinois National's September 23, 2004 Demand; (ii) states that Petrocelli had at one time informed USF&G that Petrocelli "was in the process of obtaining replacement security" but does not say that replacement security was ever provided; (iii) states that Petrocelli subsequently informed USF&G that the "matter was resolved" but does not say how the matter was purportedly resolved; and (iv) states that "[b]y copy of this letter, [USF&G] is demanding that Petrocelli Electric Co., Inc. provide satisfactory documentation that it has met its obligations to [Illinois National] on the above-captioned bond." The Court is respectfully referred to the July 26, 2005 letter itself (Zanotta Affidavit, Ex. E) for a complete embodiment of its terms.

6.    **Alleged Fact:**

USF&G never received a response from Illinois National to the July 26, 2005 letter. As a result, USF&G assumed that all questions pertaining to the demand for successive security to replace the Bond had been resolved. (Zanotta Affidavit)

**Response:**    Disputed, but immaterial.

The instant lawsuit seeking enforcement of the Bond is a response to the July 26, 2005 letter and USF&G's failure to honor the terms of the Bond. Illinois National cannot speak as to what USF&G may have chosen to assume. In any event, any such "assumptions" are irrelevant, and no response to the July 26, 2005 letter is required as a predicate to enforcement of the Bond.

Clear and complete writings like the Bond are to be enforced according to their terms. AMEX Assurance Co. v. Carpides, 179 F. Supp. 2d 309, 318 (S.D.N.Y.

2002); <u>W.W.W. Assocs., Inc. v. Giancontieri</u>, 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440

(1990); <u>Continental Ins. Co. v. 115-123 W. 29th St. Owners Corp.</u>, 275 A.D.2d 604,

605, 713 N.Y.S.2d 38, 39 (1st Dep't 2000). The Bond specifically provides

> <u>Within five (5) business days of Surety's receipt of a
> demand for payment under this Bond ("Demand"),
> [USF&G] shall pay to [Illinois National] the amount of
> such Demand. [Illinois National's] Demand</u> to [USF&G]
> for the amount due, either as security or for payment or
> for reimbursement pursuant to the Agreement(s) <u>shall be
> absolute proof of the existence and extent of the liability
> of [Petrocelli] and [USF&G] to [Illinois National]
> hereunder.</u> Bond ¶ 1. (Emphases added)

In addition, USF&G expressly waived all of its "legal or equitable

discharge[s] or defense[s]," included any purported abandonment or laches defenses.

<u>See</u> Bond ¶ 4.

7.    **<u>Alleged Fact:</u>**

> It was not until the receipt of a letter dated January 19, 2007 - well
> over two years after the cancellation of the Bond - that Illinois
> National communicated with USF&G regarding the Bond. (Zanotta
> Affidavit, Exhibit F)

**Response:**    Undisputed, but immaterial.

No communication with USF&G after the September 23, 2004 Demand is

required as a predicate to enforcement of the Bond.

Clear and complete writings like the Bond are to be enforced according

to their terms. <u>AMEX Assurance Co. v. Carpides</u>, 179 F. Supp. 2d 309, 318 (S.D.N.Y.

2002); <u>W.W.W. Assocs., Inc. v. Giancontieri</u>, 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440

(1990); <u>Continental Ins. Co. v. 115-123 W. 29th St. Owners Corp.</u>, 275 A.D.2d 604,

4

605, 713 N.Y.S.2d 38, 39 (1st Dep't 2000).  The Bond specifically provides

> Within five (5) business days of Surety's receipt of a
> demand for payment under this Bond ("Demand"),
> [USF&G] shall pay to [Illinois National] the amount of
> such Demand. [Illinois National's] Demand to [USF&G]
> for the amount due, either as security or for payment or
> for reimbursement pursuant to the Agreement(s) shall be
> absolute proof of the existence and extent of the liability
> of [Petrocelli] and [USF&G] to [Illinois National]
> hereunder.  Bond ¶ 1.  (Emphases added)

In addition, USF&G expressly waived all of its "legal or equitable

discharge[s] or defense[s]," included any purported abandonment or laches defenses.  See

Bond ¶ 4.


8.    **Alleged Fact:**

In the January 19, 2007 letter, Illinois National demanded payment
of the full amount of the Bond, but for a completely different
reason than the one set forth in the September 23, 2004 letter.
(Zanotta Affidavit, Exhibit F)

**Response:**    Undisputed, but immaterial.

This purported fact is immaterial to the instant Motion for Summary

Judgment for at least the following reasons.

First, the Bond specifically provides

> Within five (5) business days of Surety's receipt of a
> demand for payment under this Bond ("Demand"),
> [USF&G] shall pay to [Illinois National] the amount of
> such Demand. [Illinois National's] Demand to [USF&G]
> for the amount due, either as security or for payment or
> for reimbursement pursuant to the Agreement(s) shall be
> absolute proof of the existence and extent of the liability
> of [Petrocelli] and [USF&G] to [Illinois National]
> hereunder.  Bond ¶ 1.  (Emphases added)

Second, the Bond specifically provides that Illinois National "may present one or more Demands at any time in its sole discretion." Bond ¶ 1.

Third, Illinois National's lawsuit (and the instant summary judgment motion) seeks recovery solely under the September 23, 2004 Demand (see Complaint; SJ Mem. at 2-14), rendering the January 19, 2007 Demand irrelevant to this summary judgment motion.

Fourth, USF&G expressly waived all of its "legal or equitable discharge[s] or defense[s]," included any purported abandonment or laches defenses. See Bond ¶ 4.

9.    **Alleged Fact:**

The January 19, 2007 letter, unlike the September 23, 2004 letter, made no reference to a demand for successive security for replacement of the Bond. Instead, the January 19, 2007 letter demanded payment in the amount of $916,953.00 "to satisfy outstanding bills on a deductible loss reimbursement for September 2006." (Zanotta Affidavit, Exhibit F)

**Response:**    Undisputed, but immaterial.

This purported fact is immaterial to the instant Motion for Summary Judgment for at least the following reasons.

First, the Bond specifically provides

Within five (5) business days of Surety's receipt of a demand for payment under this Bond ("Demand"), [USF&G] shall pay to [Illinois National] the amount of such Demand. [Illinois National's] Demand to [USF&G] for the amount due, either as security or for payment or for reimbursement pursuant to the Agreement(s) shall be absolute proof of the existence and extent of the liability of [Petrocelli] and [USF&G] to [Illinois National] hereunder. Bond ¶ 1. (Emphases added)

Second, the Bond specifically provides that Illinois National "may present one or more Demands at any time in its sole discretion." Bond ¶ 1.

Third, Illinois National's lawsuit (and the instant summary judgment motion) seeks recovery solely under the September 23, 2004 Demand (see Complaint; SJ Mem. at 2-14), rendering the January 19, 2007 Demand irrelevant to this summary judgment motion.

Fourth, USF&G expressly waived all of its "legal or equitable discharge[s] or defense[s]," included any purported abandonment or laches defenses. See Bond ¶ 4.

> 10.    **Alleged Fact:**
>
> USF&G responded to the January 19, 2007 letter in a letter dated January 30, 2007, in which USF&G denied the demand of Illinois National for payment on the ground that USF&G had cancelled the Bond effective October 7, 2004. (Zanotta Affidavit, Exhibit G)
>
> **Response:**    Undisputed, but immaterial.

This purported fact is immaterial to the instant Motion for Summary Judgment for at least the following reasons.

First, the Bond specifically provides

> Within five (5) business days of Surety's receipt of a demand for payment under this Bond ("Demand"), [USF&G] shall pay to [Illinois National] the amount of such Demand. [Illinois National's] Demand to [USF&G] for the amount due, either as security or for payment or for reimbursement pursuant to the Agreement(s) shall be absolute proof of the existence and extent of the liability of [Petrocelli] and [USF&G] to [Illinois National] hereunder. Bond ¶ 1. (Emphases added)

Second, the Bond specifically provides that Illinois National "may present

one or more Demands at any time in its sole discretion." Bond ¶ 1.

Third, Illinois National's lawsuit (and the instant summary judgment motion) seeks recovery solely under the September 23, 2004 Demand (see Complaint; SJ Mem. at 2-14), rendering the January 19, 2007 Demand irrelevant to this summary judgment motion.

Fourth, USF&G expressly waived all of its "legal or equitable discharge[s] or defense[s]," included any purported abandonment or laches defenses. See Bond ¶ 4.

11. **Alleged Fact:**

Illinois National did not respond to the January 30, 2007 letter. It subsequently commenced this lawsuit on September 21, 2007. (Zanotta Affidavit; Complaint)

**Response:**      Undisputed, but immaterial.

This purported fact is immaterial to the instant Motion for Summary Judgment for at least the following reasons.

First, the Bond specifically provides

Within five (5) business days of Surety's receipt of a demand for payment under this Bond ("Demand"), [USF&G] shall pay to [Illinois National] the amount of such Demand. [Illinois National's] Demand to [USF&G] for the amount due, either as security or for payment or for reimbursement pursuant to the Agreement(s) shall be absolute proof of the existence and extent of the liability of [Petrocelli] and [USF&G] to [Illinois National] hereunder. Bond ¶ 1. (Emphases added)

Second, the Bond specifically provides that Illinois National "may present one or more Demands at any time in its sole discretion." Bond ¶ 1.

Third, Illinois National's lawsuit (and the instant summary judgment

motion) seeks recovery solely under the September 23, 2004 Demand (see Complaint; SJ Mem. at 2-14), rendering the January 19, 2007 Demand irrelevant to this summary judgment motion.

Fourth, USF&G expressly waived all of its "legal or equitable discharge[s] or defense[s]," included any purported abandonment or laches defenses. See Bond ¶ 4.

12.    **Alleged Fact:**

Paragraph 2 of the Bond provides, in pertinent part, as follows:

> In the event that Obligee shall demand the entire penal sum of the Bond under a Demand (less any previous amounts paid to Obligee under the Bond), Obligee shall hold ail funds ("Bond Collateral") received as security for the Obligations and shall apply such funds to the Obligations from time to time in its sole discretion. At such time as Obligee determines in its sole discretion that all of the Obligations are fully and finally paid and such payment is not subject to avoidance or turnover, Obligee shall return to the Surety the unapplied portion of the Bond Collateral. [Emphasis added]

(Zanotta Affidavit, Exhibit A, ¶ 2)

**Response:**    Undisputed, but incomplete.

Paragraph 2 of the Bond also provides

> The Surety [USF&G], whether in its capacity as surety or subrogee of the Principal [Petrocelli], waives, to the fullest extent permitted by applicable law each and every right which it may have to contest Obligee's [Illinois National's] computation of the Obligations or the application of the Bond Collateral by the Obligee [Illinois National] to the Obligations, and waives, to the fullest extent permitted by applicable law, each and every right which it may have to seek reimbursement, restitution or recovery of any Bond Collateral. Bond ¶ 2.

The Court is respectfully referred to the Bond itself (Levitt Decl., Ex. A)

for a complete embodiment of its terms.

### 13.    **Alleged Fact:**

The second WHEREAS clause of the Bond defines "Obligations" as "the sums due or to become due from Principal [Petrocelli] to the Obligee [Illinois National] under the Agreements." The first WHEREAS clause of the Bond defines the "Agreements" collectively as certain insurance policies Illinois National issued on behalf of Petrocelli and certain other agreements between Illinois National and Petrocelli. (Zanotta Affidavit, Exhibit A)

**Response:**    Undisputed, but incomplete.

The second Whereas Clause states:

WHEREAS, the Obligee requires security for all of the Principal's Obligations to Obligee under each of the Agreements. For the purposes of this Bond, "Obligation(s)" is understood to mean the sums due or to become due from Prinicpal or Obligee under the Agreements. (Emphases added)

The first Whereas Clause states:

WHEREAS, the Obligee has issued certain insurance policies on behalf of the Principal and has entered into certain other agreements with the Principal as may be amended and/or renewed from time to time (herein collectively referred to as the "Agreement(s)"). (Emphasis added)

The Court is respectfully referred to the Bond itself (Levitt Decl., Ex. A)

for a complete embodiment of its terms.

### 14.    **Alleged Fact:**

Illinois National abandoned its September 23, 2004 demand for replacement security from USF&G because it never responded to the July 26, 2005 inquiry from USF&G as to whether that issue had been resolved. (Zanotta Affidavit)

**Response:**    Disputed, but issue of law, not issue of material fact.

It is undisputed that Illinois National sent a Demand to USF&G on September 23, 2004. Any assertion that a response to the July 26, 2005 letter is required under the Bond as a predicate to enforcement of the Bond is an issue of law for the Court. It is not an issue of material fact requiring discovery or denial of Illinois National's Motion for Summary Judgment. See Hartford Acc. & Indem. Co. v. Wesolowski, 33 N.Y.2d 169, 172,350 N.Y.S.2d 895, 305 N.E.2d 907 (1973) ("it is the [responsibility] of the court to interpret written instruments"); Mallad Constr. Corp. v. County Federal Savings and Loan Assoc., 32 N.Y.2d 285, 291, 298 N.E.2d 96, 100, 344 N.Y.S.2d 925, 930 (1973) (same); Saks v. Nicosia Contacting Corp., 215 A.D.2d 832, 833, 725 N.Y.S.2d 758, 759 (3d Dept. 1995) (interpretation of a contract is  question of law for the court).

In connection with the Court's interpretation of the Bond, clear and complete writings like the Bond are to be enforced according to their terms. AMEX Assurance Co. v. Carpides, 179 F. Supp. 2d 309, 318 (S.D.N.Y. 2002); W.W.W. Assocs., Inc. v. Giancontieri, 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440 (1990); Continental Ins. Co. v. 115-123 W. 29th St. Owners Corp., 275 A.D.2d 604, 605, 713 N.Y.S.2d 38, 39 (1st Dep't 2000). The Bond specifically provides

> Within five (5) business days of Surety's receipt of a demand for payment under this Bond ("Demand"), [USF&G] shall pay to [Illinois National] the amount of such Demand. [Illinois National's] Demand to [USF&G] for the amount due, either as security or for payment or for reimbursement pursuant to the Agreement(s) shall be absolute proof of the existence and extent of the liability

11

of [Petrocelli] and [USF&G] to [Illinois National] hereunder. Bond ¶ 1. (Emphases added)

In addition, USF&G expressly waived all of its "legal or equitable discharge[s] or defense[s]," included any purported abandonment or laches defenses. See Bond ¶ 4.

15.   **Alleged Fact:**

By relinquishing its claim for the Bond Collateral and subsequently demanding the full amount of the Bond for reimbursement of a September, 2006 deductible loss, Illinois National implicitly acknowledged that no Obligations remain outstanding under the Agreements. (Zanotta Affidavit, Exhibit A, ¶ 2)

**Response:**    Disputed, but issue of law, not issue of material fact.

It is undisputed that Illinois National sent a Demand to USF&G on September 23, 2004. Any assertion that further responses or further evidence is required under the Bond as a predicate to enforcement of the Bond are issues of law for the Court. These are not issues of material fact requiring discovery or denial of Illinois National's Motion for Summary Judgment. See Hartford Acc. & Indem. Co. v. Wesolowski, 33 N.Y.2d 169, 172,350 N.Y.S.2d 895, 305 N.E.2d 907 (1973) ("it is the [responsibility] of the Court to interpret written instruments"). And, in connection with the Court's interpretation of the Bond, clear and complete writings like the Bond are to be enforced according to their terms. AMEX Assurance Co. v. Carpides, 179 F. Supp. 2d 309, 318 (S.D.N.Y. 2002).

First, the Bond specifically provides

Within five (5) business days of Surety's receipt of a demand for payment under this Bond ("Demand"),

> [USF&G] shall pay to [Illinois National] the amount of
> such Demand. [Illinois National's] Demand to [USF&G]
> for the amount due, either as security or for payment or
> for reimbursement pursuant to the Agreement(s) shall be
> absolute proof of the existence and extent of the liability
> of [Petrocelli] and [USF&G] to [Illinois National]
> hereunder. Bond ¶ 1. (Emphases added)

Second, the Bond specifically provides that Illinois National "may present one or more Demands at any time in its sole discretion." Bond ¶ 1.

Third, Illinois National's lawsuit (and the instant summary judgment motion) seeks recovery solely under the September 23, 2004 Demand (see Complaint; SJ Mem. at 2-14), rendering the January 19, 2007 Demand irrelevant to this summary judgment motion.

Fourth, USF&G expressly waived all of its "legal or equitable discharge[s] or defense[s]," included any purported abandonment or laches defenses. See Bond ¶ 4. USF&G also agreed to waive "to the fullest extent permitted by applicable law each and every right which it may have to contest [Illinois National's] computation of the Obligations or the application of the Bond Collateral by [Illinois National] to the Obligations, and . . . each and every right which it may have to seek reimbursement, restitution or recovery of any Bond Collateral." Id. ¶ 2.

Fifth, Illinois National has the right to (i) apply the Bond Collateral "to the Obligations from time to time in its sole discretion," and (ii) determine "in its sole discretion" if and when "all of the Obligations have been fully and finally paid" by the Bond Collateral. Bond ¶ 2.

Sixth, there can be no dispute of fact because USF&G admitted that

13

"Petrocelli's Obligations to Illinois National have not been fully and finally paid." <u>See</u>

Illinois National Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1

("Statement of Undisputed Facts") ¶ 17 (citing Levitt Decl. ¶ 8).[1]

16.   **Alleged Fact:**

Illinois National has presented no evidence that its payment of the September 2006 deductible loss had anything to do with the payment of any Obligations under the Agreements referenced in the Bond. (Illinois National Summary Judgment Motion)

**Response:**   Disputed, but issue of law, not issue of material fact.

It is undisputed that Illinois National sent a Demand to USF&G on

September 23, 2004.  Any assertion that Illinois National is required to present additional

"evidence" as a predicate to enforcement of the Bond is an issue of law for the Court.  It

is not an issue of material fact requiring discovery or denial of Illinois National's

Motion for Summary Judgment.  <u>See Hartford Acc. & Indem. Co. v. Wesolowski</u>, 33

N.Y.2d 169, 172, 350 N.Y.S.2d 895, 305 N.E.2d 907 (1973) ("it is the [responsibility]

of the Court to interpret written instruments").  And, in connection with the Court's

interpretation of the Bond, clear and complete writings like the Bond are to be enforced

according to their terms.  <u>AMEX Assurance Co. v. Carpides</u>, 179 F. Supp. 2d 309, 318

(S.D.N.Y. 2002).

---

[1] Local Rule 56.1(c) requires that USF&G submit a statement that "specifically controvert[s] by a correspondingly numbered paragraph" each numbered paragraph in Illinois National's Statement of Undisputed Facts.  Because USF&G failed to submit any such statement, or controvert Illinois National's Statement of Undisputed Facts paragraph by paragraph, the facts set forth in Illinois National's Statement of Undisputed Facts are "deemed to be admitted" for purposes of the instant summary judgment motion.  <u>See</u> Local Rule 56.1(c).

First, the Bond specifically provides

> Within five (5) business days of Surety's receipt of a
> demand for payment under this Bond ("Demand"),
> [USF&G] shall pay to [Illinois National] the amount of
> such Demand. [Illinois National's] Demand to [USF&G]
> for the amount due, either as security or for payment or
> for reimbursement pursuant to the Agreement(s) shall be
> absolute proof of the existence and extent of the liability
> of [Petrocelli] and [USF&G] to [Illinois National]
> hereunder. Bond ¶ 1. (Emphases added)

Second, the Bond specifically provides that Illinois National "may present one or more Demands at any time in its sole discretion." Bond ¶ 1.

Third, Illinois National's lawsuit (and the instant summary judgment motion) seeks recovery solely under the September 23, 2004 Demand (see Complaint; SJ Mem. at 2-14), rendering the January 19, 2007 Demand irrelevant to this summary judgment motion.

Fourth, USF&G expressly waived all of its "legal or equitable discharge[s] or defense[s]," included any purported abandonment or laches defenses. See Bond ¶ 4. USF&G also agreed to waive "to the fullest extent permitted by applicable law each and every right which it may have to contest [Illinois National's] computation of the Obligations or the application of the Bond Collateral by [Illinois National] to the Obligations, and . . . each and every right which it may have to seek reimbursement, restitution or recovery of any Bond Collateral." Id. ¶ 2.

Fifth, Illinois National has the right to (i) apply the Bond Collateral "to the Obligations from time to time in its sole discretion," and (ii) determine "in its sole discretion" if and when "all of the Obligations have been fully and finally paid" by the

Bond Collateral. Bond ¶ 2.

17.    **Alleged Fact:**

Having cancelled the Bond effective October 7, 2004, USF&G cannot be liable for a loss that accrued in September 2006, even if the Principal remains liable for that loss. (Zanotta Affidavit, Exhibit A, ¶ 5 and Exhibit B)

**Response:**    Disputed, but issue of law, not issue of material fact.

It is undisputed that Illinois National sent a Demand to USF&G on September 23, 2004.  Any assertion as to the scope of USF&G's liability under the Bond is an issue of law for the Court.  It is not an issue of material fact requiring discovery or denial of Illinois National's Motion for Summary Judgment.  See Hartford Acc. & Indem. Co. v. Wesolowski, 33 N.Y.2d 169, 172,350 N.Y.S.2d 895, 305 N.E.2d 907 (1973) ("it is the [responsibility] of the Court to interpret written instruments").  And, in connection with the Court's interpretation of the Bond, clear and complete writings like the Bond are to be enforced according to their terms.  AMEX Assurance Co. v. Carpides, 179 F. Supp. 2d 309, 318 (S.D.N.Y. 2002).

First, the Bond specifically provides

Within five (5) business days of Surety's receipt of a demand for payment under this Bond ("Demand"), [USF&G] shall pay to [Illinois National] the amount of such Demand. [Illinois National's] Demand to [USF&G] for the amount due, either as security or for payment or for reimbursement pursuant to the Agreement(s) shall be absolute proof of the existence and extent of the liability of [Petrocelli] and [USF&G] to [Illinois National] hereunder. Bond ¶ 1. (Emphases added)

Second, the Bond specifically provides that Illinois National "may present

one or more Demands at any time in its sole discretion." Bond ¶ 1.

Third, Illinois National's lawsuit (and the instant summary judgment motion) seeks recovery solely under the September 23, 2004 Demand (see Complaint; SJ Mem. at 2-14), rendering the January 19, 2007 Demand irrelevant to this summary judgment motion.

Fourth, USF&G expressly waived all of its "legal or equitable discharge[s] or defense[s]," included any purported abandonment or laches defenses. See Bond ¶ 4. USF&G also agreed to waive "to the fullest extent permitted by applicable law each and every right which it may have to contest [Illinois National's] computation of the Obligations or the application of the Bond Collateral by [Illinois National] to the Obligations, and . . . each and every right which it may have to seek reimbursement, restitution or recovery of any Bond Collateral." Id. ¶ 2.

Fifth, Illinois National has the right to (i) apply the Bond Collateral "to the Obligations from time to time in its sole discretion," and (ii) determine "in its sole discretion" if and when "all of the Obligations have been fully and finally paid" by the Bond Collateral. Bond ¶ 2.

18. **Alleged Fact:**

Based on the fact that Illinois National never responded to the July 26, 2005 letter of USF&G and that the next correspondence dated January 19, 2007 demanded payment on a September 2006 deductible loss reimbursement, the documentation of Illinois National creates a factual issue as to whether the requirement for replacement security under the Bond still exists. (Zanotta Affidavit, Exhibits C, D, E and F)

**Response:**    Disputed, but issue of law, not issue of material fact.

It is undisputed that Illinois National sent a Demand to USF&G on September 23, 2004. Any assertion that further responses or further evidence is required under the Bond as a predicate to enforcement of the Bond are issues of law for the Court. These are not issues of material fact requiring discovery or denial of Illinois National's Motion for Summary Judgment. See Hartford Acc. & Indem. Co. v. Wesolowski, 33 N.Y.2d 169, 172,350 N.Y.S.2d 895, 305 N.E.2d 907 (1973) ("it is the [responsibility] of the Court to interpret written instruments"). And, in connection with the Court's interpretation of the Bond, clear and complete writings like the Bond are to be enforced according to their terms. AMEX Assurance Co. v. Carpides, 179 F. Supp. 2d 309, 318 (S.D.N.Y. 2002).

First, the Bond specifically provides

Within five (5) business days of Surety's receipt of a demand for payment under this Bond ("Demand"), [USF&G] shall pay to [Illinois National] the amount of such Demand. [Illinois National's] Demand to [USF&G] for the amount due, either as security or for payment or for reimbursement pursuant to the Agreement(s) shall be absolute proof of the existence and extent of the liability of [Petrocelli] and [USF&G] to [Illinois National] hereunder. Bond ¶ 1. (Emphases added)

Second, the Bond specifically provides that Illinois National "may present one or more Demands at any time in its sole discretion." Bond ¶ 1.

Third, Illinois National's lawsuit (and the instant summary judgment motion) seeks recovery solely under the September 23, 2004 Demand (see Complaint; SJ Mem. at 2-14), rendering the January 19, 2007 Demand irrelevant to this summary judgment motion.

18

Fourth, USF&G expressly waived all of its "legal or equitable discharge[s] or defense[s]," included any purported abandonment or laches defenses. See Bond ¶ 4. USF&G also agreed to waive "to the fullest extent permitted by applicable law each and every right which it may have to contest [Illinois National's] computation of the Obligations or the application of the Bond Collateral by [Illinois National] to the Obligations, and . . . each and every right which it may have to seek reimbursement, restitution or recovery of any Bond Collateral." Id. ¶ 2.

Fifth, Illinois National has the right to (i) apply the Bond Collateral "to the Obligations from time to time in its sole discretion," and (ii) determine "in its sole discretion" if and when "all of the Obligations have been fully and finally paid" by the Bond Collateral. Bond ¶ 2.

Sixth, the second Whereas Clause of the Bond states that the "Obligee [Illinois National] requires security for all of the Principal's [Petrocelli's] Obligations to Obligee under each of the Agreements" (emphasis added). Pursuant to Local Rule 56.1(c), USF&G is deemed to have admitted that "Petrocelli's Obligations to Illinois National have not been fully and finally paid." See Illinois National Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Statement of Undisputed Facts") ¶ 17 (citing Levitt Decl. ¶ 8). It is also deemed admitted by USF&G that "[a]fter USF&G cancelled the Bond, Illinois National did not receive successor collateral from Petrocelli acceptable to Illinois National to replace the Bond." Statement of Undisputed Facts ¶ 12 (citing Levitt Decl. ¶ 5).

19.    **Alleged Fact:**

Paragraph 1 of the Bond provides, "The Obligee may present one or more Demands at any time in its sole discretion, <u>provided however, Surety shall not be obligated to pay an aggregate amount in excess of the penal sum of the bond.</u>" [Emphasis added] (Zanotta Affidavit, Exhibit A, ¶ 1)

**Response:**    Undisputed, but incomplete.

The Court is respectfully referred to Paragraph 1 of the Bond itself (Levitt Decl., Ex. A) for a complete embodiment of its terms.

20.    **Alleged Fact:**

Pursuant to paragraph 1, Illinois National cannot demand both the full penal sum, as it did in its September 23, 2004 letter, and the full amount of the Bond to satisfy outstanding bills on a deductible loss reimbursement, as it did in its January 19, 2007 letter. (Zanotta Affidavit, Exhibit A, ¶ 1)

**Response:**    Disputed, but issue of law, not issue of material fact.

It is undisputed that Illinois National sent a Demand to USF&G on September 23, 2004. Any assertion as to the proper interpretation of Paragraph 1 of the Bond is an issue of law for the Court. It is not an issue of material fact requiring discovery or denial of Illinois National's Motion for Summary Judgment. See <u>Hartford Acc. & Indem. Co. v. Wesolowski</u>, 33 N.Y.2d 169, 172,350 N.Y.S.2d 895, 305 N.E.2d 907 (1973) ("it is the [responsibility] of the Court to interpret written instruments"). And, in connection with the Court's interpretation of the Bond, clear and complete writings like the Bond are to be enforced according to their terms. <u>AMEX Assurance Co. v. Carpides</u>, 179 F. Supp. 2d 309, 318 (S.D.N.Y. 2002).

First, the Bond specifically provides

> <u>Within five (5) business days of Surety's receipt of a</u>
> <u>demand for payment under this Bond ("Demand"),</u>
> <u>[USF&G] shall pay to [Illinois National] the amount of</u>
> <u>such Demand. [Illinois National's] Demand</u> to [USF&G]
> for the amount due, either as security or for payment or
> for reimbursement pursuant to the Agreement(s) <u>shall be</u>
> <u>absolute proof of the existence and extent of the liability</u>
> <u>of [Petrocelli] and [USF&G] to [Illinois National]</u>
> <u>hereunder</u>. Bond ¶ 1. (Emphases added)

Second, the Bond specifically provides that Illinois National "may present one or more Demands at any time in its sole discretion." Bond ¶ 1.

Third, Illinois National's lawsuit (and the instant summary judgment motion) seeks recovery solely under the September 23, 2004 Demand (<u>see</u> Complaint; SJ Mem. at 2-14), rendering the January 19, 2007 Demand irrelevant to this summary judgment motion.

Fourth, Paragraph 1 of the Bond merely provides that USF&G "shall not be obligated <u>to pay</u> an aggregate amount in excess of the penal sum of the bond" emphasis added). By its lawsuit (and the instant summary judgment motion) Illinois National seeks to have USF&G pay to Illinois National the penal sum of the Bond. <u>See</u> Complaint; SJ Mem. at 2-14.

21.    **Alleged Fact:**

Paragraph 2 of the Bond, which states that the Surety waives "each and every right which it may have to contest Obligee's computation of the Obligations or the application of the Bond Collateral by the Obligee to the Obligations" does not permit Illinois National to seek payment on claims that accrued after the cancellation date of the Bond or to demand more than the full penal sum of the Bond, which Illinois National has done in its September 23, 2004 and January 19, 2007 letters. (Zanotta Affidavit, Exhibits A, C and F)

21

**Response:**    Disputed, but issue of law, not issue of material fact.

It is undisputed that Illinois National sent a Demand to USF&G on September 23, 2004. Any assertion as to the proper interpretation of Paragraph 2 of the Bond is an issue of law for the Court. It is not an issue of material fact requiring discovery or denial of Illinois National's Motion for Summary Judgment. See Hartford Acc. & Indem. Co. v. Wesolowski, 33 N.Y.2d 169, 172,350 N.Y.S.2d 895, 305 N.E.2d 907 (1973) ("it is the [responsibility] of the Court to interpret written instruments"). And, in connection with the Court's interpretation of the Bond, clear and complete writings like the Bond are to be enforced according to their terms. AMEX Assurance Co. v. Carpides, 179 F. Supp. 2d 309, 318 (S.D.N.Y. 2002).

First, the Bond specifically provides

Within five (5) business days of Surety's receipt of a demand for payment under this Bond ("Demand"), [USF&G] shall pay to [Illinois National] the amount of such Demand. [Illinois National's] Demand to [USF&G] for the amount due, either as security or for payment or for reimbursement pursuant to the Agreement(s) shall be absolute proof of the existence and extent of the liability of [Petrocelli] and [USF&G] to [Illinois National] hereunder. Bond ¶ 1. (Emphases added)

Second, Paragraph 1 further provides that

[Illinois National] may present one or more Demands at any time in its sole discretion, provided, however, Surety shall not be obligated to pay an aggregate amount in excess of the penal sum of the bond. Bond ¶ 1. (Emphasis added)

Third, by its lawsuit (and the instant summary judgment motion) Illinois National seeks to have USF&G pay to Illinois National the penal sum of the Bond. See

Complaint; SJ Mem. at 2-14.

Fourth, Illinois National's lawsuit (and the instant summary judgment motion) seeks recovery solely under the September 23, 2004 Demand (see Complaint; SJ Mem. at 2-14), rendering the January 19, 2007 Demand irrelevant to this summary judgment motion.

Fifth, USF&G expressly waived all of its "legal or equitable discharge[s] or defense[s]," included any purported abandonment or laches defenses. See Bond ¶ 4. USF&G also agreed to waive "to the fullest extent permitted by applicable law each and every right which it may have to contest [Illinois National's] computation of the Obligations or the application of the Bond Collateral by [Illinois National] to the Obligations, and . . . each and every right which it may have to seek reimbursement, restitution or recovery of any Bond Collateral." Id. ¶ 2.

Sixth, Illinois National has the right to (i) apply the Bond Collateral "to the Obligations from time to time in its sole discretion," and (ii) determine "in its sole discretion" if and when "all of the Obligations have been fully and finally paid" by the Bond Collateral. Bond ¶ 2.

22.  **Alleged Fact:**

Illinois National is not entitled to interest for the period October 1, 2004 to April 7, 2008 under paragraph 3 of the Bond. Illinois National has not shown how it incurred interest in enforcing the Bond as early as October 1, 2004, where Illinois National did not pursue the Bond Collateral and, instead, sought the full amount of the Bond to cover a deductible loss that accrued after the cancellation date of the Bond. (Zanotta Affidavit, Exhibit A)

**Response:**    Disputed, but issue of law, not issue of material fact.

It is undisputed that Illinois National sent a Demand to USF&G on September 23, 2004. Any assertion as to the proper interpretation of Paragraph 3 of the Bond is an issue of law for the Court. It is not an issue of material fact requiring discovery or denial of Illinois National's Motion for Summary Judgment. See Hartford Acc. & Indem. Co. v. Wesolowski, 33 N.Y.2d 169, 172,350 N.Y.S.2d 895, 305 N.E.2d 907 (1973) ("it is the [responsibility] of the Court to interpret written instruments"). And, in connection with the Court's interpretation of the Bond, clear and complete writings like the Bond are to be enforced according to their terms. AMEX Assurance Co. v. Carpides, 179 F. Supp. 2d 309, 318 (S.D.N.Y. 2002).

Paragraph 1 of the Bond specifically provides

> Within five (5) business days of Surety's receipt of a demand for payment under this Bond ("Demand"), [USF&G] shall pay to [Illinois National] the amount of such Demand. [Illinois National's] Demand to [USF&G] for the amount due, either as security or for payment or for reimbursement pursuant to the Agreement(s) shall be absolute proof of the existence and extent of the liability of [Petrocelli] and [USF&G] to [Illinois National] hereunder. Bond ¶ 1. (Emphases added)

Paragraph 3 of the Bond specifically provides

> Failure to pay or reimburse [Illinois National] as herein provided shall cause [USF&G] to be additionally liable for any and all reasonable costs and expenses, including attorney's fees and interest, incurred by [Illinois National] in enforcing this bond, such liability to be in addition to the bond penalty. Bond ¶ 3. (Emphasis added)

Accordingly, USF&G became responsible for reasonable costs and expenses, including attorneys fees and interest, the moment it failed to pay Illinois National's September 2004 Demand within five days of receipt.

23.    **Alleged Fact:**

In order to justify its claim for interest on the full penal sum from October 1, 2004 to April 7, 2008, Illinois National should at least demonstrate that during that period, Obligations existed to which the Bond Collateral applied. (Zanotta Affidavit, Exhibit A)

**Response:**    Disputed, but issue of law, not issue of material fact.

It is undisputed that Illinois National sent a Demand to USF&G on September 23, 2004. Any assertion as to the proper interpretation of Paragraph 3 of the Bond, or any assertion that Illinois National is required to present additional "evidence" as a predicate to enforcement of Paragraph 3 of the Bond, is an issue of law for the Court. It is not an issue of material fact requiring discovery or denial of Illinois National's Motion for Summary Judgment. See Hartford Acc. & Indem. Co. v. Wesolowski, 33 N.Y.2d 169, 172,350 N.Y.S.2d 895, 305 N.E.2d 907 (1973) ("it is the [responsibility] of the Court to interpret written instruments"). And, in connection with the Court's interpretation of the Bond, clear and complete writings like the Bond are to be enforced according to their terms. AMEX Assurance Co. v. Carpides, 179 F. Supp. 2d 309, 318 (S.D.N.Y. 2002).

Paragraph 1 of the Bond specifically provides

Within five (5) business days of Surety's receipt of a demand for payment under this Bond ("Demand"), [USF&G] shall pay to [Illinois National] the amount of such Demand. [Illinois National's] Demand to [USF&G] for the amount due, either as security or for payment or for reimbursement pursuant to the Agreement(s) shall be absolute proof of the existence and extent of the liability of [Petrocelli] and [USF&G] to [Illinois National] hereunder. Bond ¶ 1. (Emphases added)

Paragraph 3 of the Bond specifically provides

> Failure to pay or reimburse [Illinois National] as herein provided shall cause [USF&G] to be additionally liable for any and all reasonable costs and expenses, including attorney's fees and interest, incurred by [Illinois National] in enforcing this bond, such liability to be in addition to the bond penalty. Bond ¶ 3. (Emphasis added)

Accordingly, USF&G became responsible for reasonable costs and expenses, including attorneys fees and interest, the moment it failed to pay Illinois National's September 2004 Demand within five days of receipt.

In any event, no disputed issue of fact exists because, pursuant to Local Rule 56.1(c), USF&G is deemed to have admitted that "Petrocelli's Obligations to Illinois National have not been fully and finally paid." See Illinois National Statement of Undisputed Facts ¶ 17 (citing Levitt Decl ¶ 8).

24.    **Alleged Fact:**

Factual issues exist as to: 1) why Illinois National abandoned its demand for the full penal sum by not responding to the July 26, 2005 letter; 2) why Illinois National instead demanded reimbursement for a September, 2006 deductible loss in the January 19, 2007 letter; 3) whether any Obligations under the Agreements remain outstanding; and 4) whether the amount Illinois National demanded in the January 19, 2007 letter remains a liability under the cancelled Bond.

**Response:**    Disputed, but these are all issues of law, not issues of material fact. Moreover, these alleged facts are immaterial to decision on the instant summary judgment motion under the plain language of the Bond.

Illinois National incorporates by reference its responses to Alleged Facts 1-24, as if fully set forth herein. The Court also is respectfully referred to the Bond itself (Levitt Decl., Ex. A) for a complete embodiment of its terms.

Dated:　New York, New York
　　　　June 30, 2008

ZEICHNER ELLMAN & KRAUSE LLP

By:＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　　Michael S. Davis
　　　Yoav M. Griver
　　　Attorneys for plaintiff Illinois National
　　　　　Insurance Company
　　　575 Lexington Avenue
　　　New York, New York 10022
　　　(212) 223-0400

526824.v1/10539-014/YG

27

<u>CERTIFICATE OF SERVICE</u>

ANTHONY ROSARIO, hereby certifies pursuant to 28 U.S.C. 1746 and under penalty of perjury that on the 30th day of June, 2008, a true copy of the within **PLAINTIFF'S RESPONSE TO DEFENDANT'S PURPORTED STATEMENT OF UNDISPUTED FACTS** was served upon Ellen August, Esq., Goetz Fitzpatrick LLP, 1 Penn Plaza, New York, New York 10119-0002 on this date by hand delivery.

Dated: New York, New York
      June 30, 2008

                                                  ANTHONY ROSARIO