```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------- X
ILLINOIS NATIONAL INSURANCE        :
COMPANY,                           :
                                   :
              Plaintiff,           :
                                   :
       -against-                   :   OPINION AND ORDER
                                   :   07 Civ. 8248 (JFK)
UNITED STATES FIDELITY             :
AND GUARANTY,                      :
              Defendant.           :
---------------------------------- X
```

**APPEARANCES**

    **For Plaintiff Illinois National Insurance Company**

        Zeichner Ellman & Krause LLP
        575 Lexington Avenue
        New York, New York 10022
          Of Counsel:  Michael S. Davis, Esq.
                      Yoav M. Griver, Esq.

    **For Defendant United States Fidelity and Guaranty**

        Goetz Fitzpatrick LLP
        One Penn Plaza, Suite 4401
        New York, New York 10119
          Of Counsel:  Ellen August, Esq.

**JOHN F. KEENAN, United States District Judge:**

    Plaintiff Illinois National Insurance Company ("Illinois National") brings this action in diversity against Defendant United States Fidelity and Guaranty ("USF&G") for breach of contract. Illinois National alleges that in November 2000, in connection with Illinois National's agreement to offer insurance to Petrocelli

Electric Co., Inc. ("Petrocelli"), USF&G, as Petrocelli's surety, executed and delivered an obligation bond (the "Bond") to Illinois National.  Illinois National claims that USF&G subsequently breached the Bond agreement by canceling the Bond and then refusing to satisfy a demand for the full penal sum.

Illinois National now brings a motion for summary judgment.  USF&G cross-moves for a stay of this action pending the outcome of Illinois National's arbitration against Petrocelli.  For the reasons outlined below, the Court grants Illinois National's motion for summary judgment and denies USF&G's motion for a stay.

**I. BACKGROUND**

The following facts, viewed in a light most favorable to the nonmovant, are undisputed unless otherwise noted. On or about November 10, 2000, USF&G, as surety, issued the Bond to Illinois National as obligee.  The Bond, which provides a maximum penal sum of $916,958, guaranteed the obligations of Petrocelli under certain insurance policies that Illinois National issued to Petrocelli.  Petrocelli would later agree to indemnify USF&G for claims arising out of the Bond agreement.

The Bond contains the following relevant clauses:

- "Within [five (5)] business days of Surety's receipt of a demand for payment under this Bond ('Demand'), Surety shall pay to the Obligee the amount of such Demand.  The Obligee's Demand to the Surety of the amount due, either as security or for payment or for reimbursement pursuant to the Agreement(s), shall be absolute proof of the existence and extent of the liability of the Principal and the Surety to the Obligee hereunder." (Zanotta Aff. Ex. A ("Bond") ¶ 1.)[1]
- "In the event that Obligee shall demand the entire penal sum of the Bond under a Demand (less any previous amounts paid to Obligee under the Bond), Obligee shall hold all funds ('Bond Collateral') received as security for the Obligations and shall apply such funds to the Obligations from time to time in its sole discretion.  At such time as Obligee determines in its sole discretion that all of the Obligations are fully and finally paid and such payment is not subject to avoidance or other turnover, Obligee shall return to the Surety the unapplied portion of the Bond Collateral.  The Surety, whether in its capacity as surety or subrogee of the

---

[1] The Bond originally provided a deadline of ten business days, but this was shorted to five days in a rider on November 10, 2000 (Levitt Decl. Ex. A.)

3

Principal, waives, to the fullest extent permitted by applicable law each and every right which it may have to contest Obligee's computation of the Obligations or the application of the Bond Collateral by the Obligee to the Obligations, and waives, to the fullest extent permitted by applicable law, each and every right which it may have to seek reimbursement, restitution or recovery of any Bond Collateral." (Bond ¶ 2.)

- "Failure to pay or reimburse the Obligee as herein provided shall cause the Surety to be additionally liable for any and all reasonable costs and expenses, including attorney's fees and interest, incurred by the Obligee in enforcing this bond, such liability to be in addition to the bond penalty." (Bond ¶ 3.)

- "Surety's obligations hereunder shall not be affected by . . . (v) any other circumstances which might otherwise constitute a legal or equitable discharge or defense for Surety." (Bond ¶ 4.)

- "This Bond shall become effective 6/1/00 and shall remain in full force and effect thereafter for a period of one year and will automatically extend for additional one year periods from the expiry date hereof, or any future expiration date, unless the Surety provides to the Obligee not less than ninety

(90) days advance written notice of its intent not to renew this Bond or unless this Bond is earlier canceled pursuant to the following. This Bond may be canceled at any time upon ninety (90) days advance written notice from Surety to Obligee. It is understood and agreed that the Obligee may recover the full amount of the Bond (less any previous amount paid to Obligee under the bond) if the Surety cancels or nonrenews the Bond and, within thirty (30) days prior to the effective date of cancellation or nonrenewal, the Obligee has not received collateral from Principal acceptable to Obligee (in its sole discretion) to replace the Bond." (Bond ¶ 5.)

- "The laws of the State of New York shall be applicable in determining the rights and obligations of the parties hereto." (Bond ¶ 7.)

In a letter dated June 30, 2004, USF&G informed Illinois National and Petrocelli that it was canceling the Bond effective October 7, 2004. In response, pursuant to paragraph 5 of the Bond, Illinois National demanded that USF&G pay the full penal sum – $916,958 – since Petrocelli had not provided adequate security to replace the Bond. Illinois National followed up in a letter dated July 2, 2005, asking USF&G for proof of payment. USF&G responded

5

on July 26, 2005, stating that Petrocelli had told USF&G that the matter was resolved. USF&G never received a direct response to its July 26, 2005, letter.

A little less than two years later, in a letter dated January 16, 2007, Illinois National again demanded payment from USF&G for the full penal sum of the Bond. Illinois National wrote that this demand was in response to Petrocelli's failure "to provide payment to satisfy outstanding bills on a deductible loss reimbursement for September 2006." USF&G refused to pay on the ground that it had canceled the Bond effective October 7, 2004.

Illinois National commenced this suit against USF&G in September 2007. In February 2008, Illinois National also initiated arbitration proceedings against Petrocelli ("the Arbitration"), demanding moneys that Petrocelli owed as "premiums, expenses, fees, reimbursement, damages, or as security." (Zanotta Aff. Ex. H.)

Illinois National now moves for summary judgment on its sole cause of action against USF&G, breach of contract. USF&G cross-moves for a stay of this action pending the outcome of the Arbitration.

## II. DISCUSSION

### A. Summary Judgment

#### 1. Standard of Review

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the moving party meets that burden, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

In determining whether there is a genuine issue as to any material fact, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. To defeat a summary judgment motion, the nonmoving party must do "more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), and "may not rely on conclusory allegations or unsubstantiated speculation," Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). Where it is clear that no rational finder of fact "could find in favor of the nonmoving party because the evidence to support its

case is so slight" summary judgment should be granted. Gallo v. Prudential Residential Servs., Ltd., 22 F.3d 1219, 1224 (2d Cir. 1994).

"Actions to enforce promissory notes and guaranties are often particularly appropriate for summary judgment." Cavendish Traders, Ltd. v. Nice Skate Shoes, Ltd., 117 F. Supp. 2d 394, 398 n.6 (S.D.N.Y. 2000).

### 2. Breach of Contract

Under New York law,[2] "a contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language employed." Morlee Sales Corp. v. Mfrs. Trust Co., 9 N.Y.2d 16, 19 (1961). Thus, "[c]lear, complete writings should generally be enforced according to their terms." Wallace v. 600 Partners Co., 86 N.Y.2d 543, 548 (1995). The interpretation of a contract is a question of law to be determined by the Court. Hartford Accident & Indem. Co. v. Wesolowski, 33 N.Y.2d 169, 172 (1973). These rules of interpretation apply fully to surety contracts. Int'l Fidelity Ins. Co. v. County of Rockland, 98 F. Supp. 2d 400, 405 (S.D.N.Y. 2000).

---

[2] Neither party disputes that New York law governs this action, pursuant to the Bond's choice-of-law clause.

8

According to Illinois National, USF&G breached the Bond agreement when it failed to pay the full penal sum within five days of Illinois National's demand. Illinois National argues that, under the Bond agreement, after USF&G indicated that it was canceling the Bond, Illinois National had a right to demand the full penal sum since Petrocelli did not provide any successor collateral. Illinois National notes that the demand itself was "absolute proof of the existence and extent of the liability," per the language of the Bond. Therefore, Illinois National concludes that it is beyond dispute that USF&G breached the Bond agreement.

USF&G counters that Illinois National abandoned its initial demand and then made a second, improper demand. According to USF&G, Illinois National abandoned its September 23, 2004, demand when it failed to respond to USF&G's July 26, 2005, letter in which USF&G informed Illinois National that it believed Petrocelli had resolved the matter. USF&G construes this alleged abandonment as "an implicit acknowledgement that no Obligations remain outstanding under the Agreements." (Def.'s Mem. 6.) USF&G further contends that Illinois National made a second independent demand in its January 19, 2007, letter, this time in response to Petrocelli's failure to pay a

deductible loss reimbursement for September 2006. Since USF&G canceled the Bond effective October 7, 2004, USF&G argues that it cannot be liable for a 2006 loss.

USF&G sums up its argument as follows: "At the very least, factual issues exist as to: 1) why Illinois National abandoned its demand for replacement security by not responding to the July 26, 2005 letter; 2) why Illinois National demanded, instead, a loss reimbursement in the January 19, 2007 letter; 3) whether any Obligations under the Agreements remain outstanding; and 4) whether the amount Illinois National demanded in the January 19, 2007 letter remains a liability under the canceled Bond." (Def.'s Mem. 7.) The Court considers each of these factual issues below.

### a. Abandonment

USF&G's assertion that Illinois National abandoned its September 23, 2004, demand is unfounded. First, the language of the Bond provides no support for this assertion. At no point does the Bond set a deadline by which Illinois National must respond to USF&G's correspondence to avoid "abandoning" its claim. Instead, the Bond simply states that Illinois National's demand is "absolute proof of the existence and extent of" USF&G's liability to Illinois National and that USF&G must satisfy

this demand within five business days.  USF&G does not dispute that Illinois National made a demand on September 23, 2004, that USF&G has yet to satisfy.

Second, USF&G cites no law in support of its abandonment argument.  To the extent that the Court generously construes this argument as asserting a defense of laches, the Court finds that USF&G waived such a defense.  Paragraph 4 of the Bond states that USF&G's obligations shall not be affected by "any other circumstances which might otherwise constitute a legal or equitable discharge or defense for [USF&G]."  This waiver of defenses is valid and enforceable under New York law. See Export-Import Bank of the United States v. Asia Pulp & Paper Co., No. 03-Civ-8554, 2008 U.S. Dist. LEXIS 11324, *11-12 (S.D.N.Y. Feb. 6, 2008)(enforcing a similar waiver of defenses).

Therefore, the Court finds that USF&G's abandonment argument does not raise a material question of fact that would make summary judgment inappropriate.

### b. Deductible Loss Reimbursement Demand

The question of why Illinois National made a second demand in January 2007 for a deductible loss reimbursement is immaterial.  Illinois National is not suing USF&G for its failure to respond to the January 2007 demand.  It is

suing USF&G for its failure to respond to the September 2004 demand. (Compl. ¶¶ 10, 13; Pl.'s Mem. ¶¶ 13-18; Pl.'s Reply 6.)  The Bond explicitly permits Illinois National to "present one or more Demands at any time in its sole discretion," (Bond ¶ 7) meaning that the January 2007 demand did not supersede the September 2004 demand.[3]  Since this suit is based only on the September 2004 demand – a still valid demand – questions relating to the January 2007 demand are immaterial and do not make summary judgment inappropriate.

### c. Outstanding Obligations

USF&G's third factual issue is closely related to its abandonment argument.  USF&G claims that, because the Bond requires Illinois National to return unapplied portions of the Bond collateral once all of the obligations are paid, Illinois National's abandonment of the September 2004 demand "constituted an implicit acknowledgement that no

---

[3] The full language of the clause reads as follows: "The Obligee may present one or more Demands at any time in its sole discretion, provided however, Surety shall not be obligated to pay an aggregate amount in excess of the penal sum of the bond." (Bond ¶ 1.)  USF&G argues that, by making two demands for the full penal amount, Illinois National is trying to force USF&G to pay an aggregate amount in excess of the penal sum.  The only question before the Court, however, is whether USF&G is liable to Illinois National for the September 2004 demand.  The Court declines to examine whether satisfaction of the September 2004 demand would provide USF&G with a complete defense should Illinois National subsequently pursue its January 2007 demand.

Obligations remain outstanding under the Agreements."
(Def.'s Mem. 6.)

The Court finds this argument unpersuasive. As discussed above, USF&G's claim that Illinois National abandoned its September 2004 demand is wholly unsupported. This argument falls on this fact alone.

If USF&G's more general goal here is to cast doubt on the extent of its liability to Illinois National, the Court notes that the language of the Bond does not allow for any ambiguity. The Bond states that Illinois National's demand "shall be absolute proof of the existence and extent of the liability." (Bond ¶ 1.) Illinois National's September 2004 demand for the full penal amount was thus absolute proof of the extent of USF&G's liability. See Travelers Cas. & Sur. Co. v. Crow & Sutton Assocs., 172 Fed. Appx. 382, 384 (2d Cir. 2006)(enforcing a similar liability provision).

### d. Liability for January 2007 Demand

USF&G's final factual issue – whether the amount Illinois National demanded in the January 19, 2007, letter remains a liability under the canceled Bond – is immaterial. Illinois National is suing based on the September 2004 demand, not the January 2007 demand. Questions of fact related to the January 2007 demand are irrelevant.

In sum, the Court finds that a contract existed between Illinois National and USF&G, that USF&G breached the contract when it did not satisfy the September 2004 demand, and that USF&G is now liable to Illinois National for the Bond's full penal amount. Since there is no genuine issue as to any material fact, the Court finds that Illinois National is entitled to judgment as a matter of law.

## B. Interest

New York law awards prejudgment interest at 9% per annum to plaintiffs who prevail on a breach of contract claim. N.Y. C.P.L.R. §§ 5001, 5004 (McKinney 2008). The amount is computed from "the earliest ascertainable date the cause of action existed," id. § 5001(b), to "the date the verdict was rendered or the report or decision was made," id. § 5001(c).

Illinois National argues that the language of the Bond and New York law entitle it to prejudgment interest as calculated from October 1, 2004, five business days after USF&G received the September 23, 2004, demand.

USF&G contends that Illinois National is not entitled to interest as calculated from October 1, 2004, since Illinois National "did not pursue the Bond Collateral and, instead, sought the full amount of the Bond to cover a

deductible loss that accrued after the cancellation date of the Bond." (Def.'s Mem. 7-8.)  As discussed above, however, the Bond does not require Illinois National to "pursue" the collateral in a given manner or by a certain deadline. Further, Illinois National seeks prejudgment interest stemming from the September 2004 demand, not from the January 2007 demand.  The Court therefore rejects USF&G's interest argument.

The Court finds that Illinois National is entitled to prejudgment interest at the rate of 9% per annum, running from October 1, 2004, to the date of entry of Judgment.[4]

### C.  Attorneys' Fees

USF&G does not dispute that Illinois National is entitled to attorneys' fees pursuant to paragraph 3 of the Bond.  The Court finds that Illinois National is so entitled.

### D.  Stay Pending Arbitration

District courts have the inherent power to grant stays pending the resolution of arbitration, including stays requested by those who are not party to the arbitration

---

[4] In its briefs, Illinois National discusses an interest amount as calculated from October 1, 2004, to April 7, 2008, the date it filed its Memorandum of Law in Support of its Motion for Summary Judgment.  The Court notes that, per New York law, the proper end date is "the date the verdict was rendered or the report or decision was made." N.Y. C.P.L.R. §§ 5001(c) (McKinney 2008).

15

agreement. <u>Nederlandse Erts-Tankersmaatschappij, N. V. v. Isbrandtsen Co.</u>, 339 F.2d 440, 441 (2d Cir. 1964). "[A] stay may . . . be appropriate where the pending proceeding is an arbitration in which issues involved in the [instant] case may be determined." <u>Id.</u> The decision to grant such a stay is entirely within the discretion of the Court. <u>Orange Chicken, L.L.C v. Nambe Mills, Inc.</u>, No. 00 Civ. 4730, 2000 U.S. Dist. LEXIS 18214, at *28 (S.D.N.Y. Dec. 19, 2000).

"The movant for a stay must . . . establish that there are issues common to the arbitration and the courts, and that those issues will finally be determined by the arbitration." <u>Id.</u> (internal quotation marks omitted). In addition, "[the movant] should demonstrate to the satisfaction of the court that they have not taken nor will take any steps to hamper the progress of the arbitration proceeding, that the arbitration may be expected to conclude within a reasonable time, and that such delay as may occur will not work undue hardship." <u>Nederlandse</u>, 339 F.2d at 442. The Court should also consider whether the stay will "promote judicial economy, avoidance of confusion and possible inconsistent results." <u>Orange Chicken</u>, 2000 U.S. Dist. LEXIS 18214, at *28

USF&G urges the Court to stay this action pending the resolution of the Arbitration. According to USF&G,

Illinois National seeks the same relief from Petrocelli in the Arbitration that it seeks in the instant suit, namely, payment for debts that Petrocelli owes.  USF&G further argues that the Arbitration will determine issues that are common to both the Arbitration and the instant suit.

Illinois National contends that USF&G cannot meet its burden as the party seeking a stay.  First, Illinois National notes that the Arbitration, which involves different agreements, different facts, and different parties, has little in common with the instant suit.  Second, Illinois National questions whether the Arbitration will finally resolve USF&G's liability to Illinois National under the Bond.  Third, Illinois National argues that the Arbitration will not be resolved in a reasonable time since the arbitrating parties have yet even to agree on an arbitration panel.

The Court finds that there are not issues common to both the Arbitration and the instant suit that would justify granting a stay.  According to Illinois National's Demand for Arbitration against Petrocelli, Illinois National seeks "amounts owed to it from coverage year 1995 to 2002 as premiums, expenses, fees, reimbursement, damages or as security" pursuant to various insurance agreements.  (Zanotta Aff. Ex. H 1.)  Though the Bond at issue in the

instant case acts as security for these insurance agreements, it is a wholly independent and distinct agreement. The resolution of Illinois National's claim against Petrocelli will have no impact on whether USF&G breached the Bond agreement when it did not satisfy the September 2004 demand.

The Court also notes that granting a stay in the instant suit will do little to promote judicial economy. As discussed above, this case is ready for summary judgment. Delaying entry of judgment at this point will not preserve judicial resources; it will only deny Plaintiff the relief it is due.[5]

### III. CONCLUSION

For the above reasons, Illinois National's motion for summary judgment is granted and USF&G's cross motion for a stay pending arbitration is denied. Illinois National is

---

[5] The Court acknowledges that USF&G may have an indemnification claim against Petrocelli for any amounts that USF&G pays in this suit. USF&G argues that it will be prejudiced if the Court forces it to seek indemnification from Petrocelli for the same amounts that Illinois National demands from Petrocelli in the Arbitration. The Court is skeptical of this claim, particularly since USF&G's satisfaction of liability under the Bond may provide Petrocelli, as the jointly and severally liable principal, with a defense in the Arbitration. Ultimately, the Court finds that it would be more prejudicial to delay awarding Illinois National a judgment to which it is currently entitled due to an indemnification agreement to which it is not a party.

awarded the Bond's full penal sum of $916,958, attorneys' fees, and prejudgment interest at the rate of 9% per annum, running from October 1, 2004, to the date of entry of Judgment. The Clerk of the Court is hereby directed to calculate the interest and remove this case from the Court's docket.

SO ORDERED.

Dated: New York, New York
November 3, 2008

*John F. Keenan*

JOHN F. KEENAN

United States District Judge